### No. C-633

### Esther M. Moss v. George Wayne Moss

(549 P.2d 404)

Decided May 3, 1976.

Epstein, Lozow and Preblud, Frederick Epstein, Gary Lozow, for petitioner.

Robert Bugdanowitz, for respondent.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

We granted certiorari to review a court of appeals decision which affirmed the trial court's permanent orders in a divorce proceeding. *Moss v. Moss*, 35 Colo. App. 53, 531 P.2d 635 (1974). Petitioner claimed that the trial court abused its discretion by awarding petitioner alimony in gross and by inequitably dividing the marital property between the parties. We affirm.

Mrs. Moss, petitioner, and Dr. Moss, respondent, were married in 1949. At the time this legal controversy arose, they were the parents of two teenage children. On December 29, 1971, Mrs. Moss filed a complaint in separate maintenance which Dr. Moss answered,[1] and, subsequently, he filed a counterclaim for divorce. On September 25, 1972, the district court granted each of the parties a divorce on the ground of cruelty, and set a hearing date for the determination of custody, child support, the division of property, alimony, costs and attorneys' fees. At the scheduled *hearing, the court entered permanent orders which form the basis of petitioner's* challenge. Petitioner appealed to the court of appeals, asserting the same arguments advanced before this court, and the court of appeals affirmed the trial court, with one judge dissenting.[2]

## I.

Petitioner first contends that the trial court abused its discretion by awarding alimony in gross, or "lump-sum" alimony, without a finding of "special circumstance" or a "compelling reason" as required by *Carlson v. Carlson,* 178 Colo. 283, 497 P.2d 1006 (1972).

Petitioner was awarded alimony in two forms. First, she was awarded Dr. Moss' one-half interest in the family home which, combined with her one-half interest derived from the property division, gave her sole ownership. Second, the judge ordered Dr. Moss pay Mrs. Moss $750 per month for the first year, and $50 per month less each year thereafter. The court ordered that the alimony payments terminate at the end of five years, "regardless of the then circumstances of the parties." The court, however, retained jurisdiction to modify the award during the five-year period. Mrs. Moss was awarded custody of the two children, and the court ordered that child support be paid out of the alimony payments in order to permit her to claim the two children as income tax deductions. The court retained jurisdiction to determine the amount of child support to be paid after the alimony payments terminated.

The trial court has broad discretion in determining the amount of alimony, *Cohan v. Cohan,* 172 Colo. 563, 474 P.2d 792 (1970), and the form of the award, *i.e.,* periodic payments or alimony in gross. *Carlson v. Carlson, supra.* The applicable statute reflects the breadth of discretion a trial judge possesses in awarding alimony. C.R.S. 1963, 46-1-5(1) provides in part:

"(a) At all times after the filing of a complaint, whether before or after the issuance of a divorce decree, *the court may make such orders, if any, as the circumstances of the case may warrant for:*

---

[1]The Uniform Dissolution of Marriage Act, section 14-10-101, *et seq.,* applies only to actions commenced on or after January 1, 1972. Section 14-10-133, C.R.S. 1973.
[2]For a fuller discussion of the facts in this case, see the court of appeals opinion. *Moss v. Moss,* 35 Colo. App. 53, 531 P.2d 635 (1974).

. . . .
"(d) Alimony;. . . ." (Emphasis added.)

Mindful of the broad discretion accorded the trial judge in such delicate matters, we have held that awards of periodic payments of alimony are preferred over awards of alimony in gross because an award of alimony in gross is a final judgment which is not modifiable at a later time while an award of periodic payments may be modified to adjust for changes in the circumstances of the parties. *Carlson v. Carlson, supra.* Thus, "in the absence of special circumstances which require or make a lump-sum award of alimony proper, or a compelling reason that necessitates the desirability for such an award, a lump-sum or gross award should not be made." *Carlson v. Carlson, supra.* Although under the circumstances in *Carlson* alimony in gross was inequitable, each case depends upon its own peculiar facts and circumstances. Alimony in gross is not unacceptable *per se. See In re Marriage of Icke and Icke,* 35 Colo. App. 60, 530 P.2d 1001 (1974), *aff'd on other grounds,* 189 Colo. 319, 540 P.2d 1076 (1975); *Rayer v. Rayer,* 32 Colo. App. 400, 512 P.2d 637 (1973).

It is clear that the award of the husband's one-half interest in the family home was alimony in gross. Although the award of periodic payments to terminate after five years was modifiable over the five-year period, it was, at least, a qualified form of alimony in gross, because after termination, the possibility of modification ceased.

The trial judge in this case has complied with the holding in *Carlson.* He made very extensive and thoughtful findings of fact and conclusions of law to which we must accord great weight. He found that it "would be an absolutely impossible situation" if Mrs. Moss did not find employment. She secured a position as an executive secretary.

Furthermore, Mrs. Moss was awarded her husband's one-half interest in the family home, which the court said would "ordinarily" belong to the husband. This award, combined with her one-half interest acquired by the division of property, gave her sole ownership of the home. The total interest in the house was awarded to Mrs. Moss so that she would have "some tangible asset with which to fall back upon, in the event of some emergency." It is an asset which in 1972 had an equity of approximately $18,000 based on a market value of $41,000. In all probability, these values have increased and will continue to increase to provide Mrs. Moss with an asset of substantial value for the years to come.

It may not be possible for Mrs. Moss to continue to live in the house indefinitely. She may have to reduce her standard of living at the expiration of five years. The avoidance of such an eventuality cannot be guaranteed by a divorce court.

The trial court, by retaining jurisdiction of the matter of child support, can fix the amount of child support at the expiration of the five-year

period in accordance with the circumstances of the parties.

In arriving at its decision, the trial court considered the doctor's earning ability; the overhead necessary to maintain his medical practice; the maintenance of $200,000 face value in life insurance policies, $50,000 of which was to protect the gross alimony payments, and $50,000 to be maintained in force "with the children of the parties to be retained as irrevocable beneficiaries thereof, in equal shares;"[3] the family debts; and the attorneys' fees of both parties, as well as Mrs. Moss' ability to work. The only car, which was unencumbered, was awarded to the wife.

Under the circumstances, we cannot say that the trial court abused its discretion in entering the challenged order. In fact, it appears that the order was manifestly fair and equitable. It is not a comparable situation to that which confronted the court in *Carlson.*

## II.

■ Mrs. Moss also contends that the trial court erred in the division of the marital property in awarding Dr. Moss his fifty percent interest in the professional corporation[4] without making a finding regarding the specific value of the interest.

The record clearly indicates that Mrs. Moss understood that the primary nature of assets belonging to the professional corporation were accounts receivable. These represented services rendered but not yet paid for. They will convert into salaries for the two professional shareholders and provide the cash flow necessary to operate. She recognized the necessity that Dr. Moss keep his interest in the professional corporation, but maintained that the value of the interest be specifically determined in the findings and that such value be taken into consideration in dividing the remainder of the marital property.

Unfortunately, a trial judge cannot in all circumstances evaluate marital property with razor-sharp exactness so that each party's share has a precise monetary value. Interests in a professional corporation are basically the sum of the earning capacities of the professional shareholders in the corporation. *See* 17 *B. Eaton, Jr., Business Organizations* § 12.05[1] (1975 ed.). The accounts receivable represent delayed installments of that earning capacity. Experts may be able to place a current value on a medical practice, but there are so many uncertainties in human behavior, health, habits, desires, ambitions and life itself, that to place a long-term value on professional earnings cannot be done with judicial exactitude.

---

[3]The $100,000 decreasing term policy was awarded to the doctor with the right to do with it as he saw fit.
[4]Section 12-36-134, C.R.S. 1973, permits physicians to form professional service corporations within limitations.

Although the judge in the present case did not place a specific value on the husband's interest in the corporation, it is clear from the record that he did consider "the value" of the corporation in determining the division of property. Testimony of an expert witness and an exhibit attempted to prove the value of the corporation and the value of Dr. Moss' interest therein. Further, while the order does award Dr. Moss his interest in the corporation, including his unvested retirement benefits, it awards Mrs. Moss virtually all other assets of substantial and determinable value.

■ We believe that the introduction of the evidence regarding the value of Dr. Moss' interest, coupled with the context of the entire permanent order, demonstrates clearly that the trial court based its order on competent evidence and a thorough consideration of every material factor. The trial court has broad discretion in dividing marital property, *Brocato v. Brocato*, 172 Colo. 390, 473 P.2d 702 (1970), and we hold that the trial court did not abuse its discretion in this case.

The judgment is affirmed.

MR. JUSTICE GROVES and MR. JUSTICE ERICKSON dissent.

MR. JUSTICE DAY does not participate.

MR. JUSTICE GROVES dissenting.

I respectfully dissent. I would reverse on the provision in the court order which would terminate alimony payments, "regardless of the circumstances of the parties," at the end of five years. If this part of the order is not void, it is certainly reversible error. The very statute which the majority cites as applicable, C.R.S. 1963, 46-1-5(4) states:

"The court *shall* retain jurisdiction of the action for the purpose of such later revisions of its orders pertaining to . . . [alimony] as changing circumstances may require. . . ." (emphasis added).

Changed circumstances may indeed require a modification of the court's order. Irrespective of the statute, the court should retain jurisdiction in order to render justice in light of unforeseen events without ordering any mandatory termination.

MR. JUSTICE ERICKSON concurs in this dissent.