In re the MARRIAGE OF Hildegard SINN, Appellee and Cross-Appellant,

and

Werner Sinn, Appellant and Cross-Appellee.

No. 81CA0403.

Colorado Court of Appeals, Div. II.

Aug. 4, 1983.

Rehearing Denied Sept. 15, 1983.

Elliott, Martinez & Allman, Robert L. Allman, Denver, for appellee and cross-appellant.

Thomas E. Schaiberger, Aurora, for appellant and cross-appellee.

SMITH, Judge.

· This is a dissolution of marriage action wherein husband, Werner Sinn, appeals an award of maintenance granted to the wife, Hildegarde Sinn, for two years. Wife cross-appeals, seeking permanent maintenance. We affirm.

On May 31, 1979, the trial court entered a decree of dissolution of marriage. Incorporated into the decree was a separation agreement which had been entered into between the parties. That separation agreement contained the following provision:

"*Spousal maintenance.* Commencing with the first day of June 1979, for a period of six (6) months, the Husband shall pay to the Wife the sum of $200.00 per month. Said sum is payable through

the registry of the court, and shall continue for a period of six (6) months, death or remarriage of the wife, whichever should first occur. The issue of maintenance shall· be reviewed by the Court at the end of six (6) months."

In April of 1980, wife filed a verified motion seeking an order for continuing spousal maintenance and for attorney's fees incurred in the prosecution of the motion. Various other motions were filed by the parties, and the matter was heard in February of 1981.

At the conclusion of the hearing, the trial court made the following relevant findings:

"4. The Court has considered the respective income situations of the parties. The Petitioner [wife] is presently receiving $250.00 per month as rent from the occupied unit in the duplex. Gross monthly income of the Respondent [husband] is $1.00 short of $2,000.00 per month. His net take-home pay ... is $1,036.00 per month. The court has analyzed his respective costs of living as reflected in his affidavit.

"5. The Court has considered the medical condition of the Petitioner and accepts the testimony of Dr. Sturges that the Petitioner presently suffers from the state of emotional dysfunction and the Court has considered the various factors testified to by the psychiatrist that lead to that clinical opinion, and from all that testimony, the Court finds that the Petitioner presently needs financial assistance for a period of time in order for her to obtain part-time work that is compatible with her level of job skills.

"6. The Court has reviewed the spousal maintenance ·clause and the separation agreement ... and the Court finds that the parties at the time the Agreement was entered into did contemplate that provision. For six months, spousal maintenance was agreed to with the view that at the end of the six-month period, the medical condition of the Petitioner would be reviewed to see whether or not she was six months later, to continue to need financial assistance. The Respondent has

so testified that was his understanding and the Court interprets the clause accordingly, i.e. that it was not a permanent order for spousal maintenance, that it was a temporary order and that the modification provision under the Uniform Dissolution of Marriage Act is not appropriate or applicable in this case."

Based on the foregoing, the court ordered husband to pay maintenance in the amount of $300 per month for two years. In addition, husband was ordered to pay maintenance arrearages in the amount of $100 per month for one year. The parties were ordered to pay their own attorney's fees.

I.

Husband first argues that because the separation agreement was incorporated into the final decree of dissolution, all of its provisions became permanent orders and that therefore no modification of the maintenance provision could be made absent a showing by wife that the original maintenance provision had become unconscionable. We do not agree that this is the applicable rule here.

■ The legal interpretation and effect of a contract is a question of law. *Buckley Bros. Motors, Inc. v. Gran Prix Imports, Inc.,* 633 P.2d 1081 (Colo.1981). Accordingly, this court is not bound by the trial court's interpretation, *see Reynolds v. Farber,* 40 Colo.App. 467, 577 P.2d 318 (1978), and although we reach the same result the trial court did, we do so from a different basis.

■ First, we note that the provisions of the separation agreement, having been incorporated into the decree, became part of the final order when the decree was entered. Section 14–10–120(1), C.R.S.1973; *In re Marriage of Seymour,* 36 Colo.App. 104, 536 P.2d 1172 (1975).

■ In determining the essential meaning of any agreement, we must undertake an examination of the entire instrument. The agreement must be construed as a whole and effect given if possible to every provision. *In re Marriage of Rother,* 651

P.2d 457 (Colo.App.1982). As we read the separation agreement, the parties agreed, between themselves, that husband would provide maintenance for six months at $200 per month, and agreed further that, at the end of that period, the trial court would "review the issue" of spousal maintenance, and enter its own order based on the facts as it found them to be at that time. Thus, contrary to husband's contention, the court was not modifying a maintenance provision which had expired at the end of six months. Rather, the court was acting under the authority of the agreement to review the situation of the parties completely and, in its discretion, to make whatever provision for further maintenance it deemed necessary.

■ Accordingly, the issue was not one of the unconscionability of the initial maintenance order. The court was free to determine the amount of maintenance to be awarded to wife, if any, and the duration of such payments under the standards of § 14–10–114, C.R.S.1973. It is evident from the findings of the trial court that all of the relevant factors were considered. Hence, the trial court neither abused its discretion nor exceeded its jurisdiction in awarding further maintenance to the wife. *In re Marriage of Icke,* 35 Colo.App. 60, 530 P.2d 1001 (1974), *aff'd,* 189 Colo. 319, 540 P.2d 1076 (1975).

## II.

Wife contends on cross-appeal that the trial court erred in limiting the maintenance award to two years, and also in not reserving the power to modify the award. We disagree.

■ We agree that the award to wife of maintenance in the form of periodic payments for a time certain is at least a "qualified form of maintenance in gross." *Moss v. Moss,* 190 Colo. 491, 549 P.2d 404 (1976). However, even if it is considered maintenance in gross, such award is not *ipso facto* erroneous.

■ The trial court has broad discretion in determining the amount of maintenance and the form of the award, *i.e.,* peri-odic payments or maintenance in gross. *Moss v. Moss, supra.* While maintenance in gross is not favored, it is not unacceptable per se, and may be awarded in a proper case. *In re Marriage of McVey,* 641 P.2d 300 (Colo.App.1981); *Moss v. Moss, supra.* And, each case depends upon its own peculiar facts and circumstances. *Moss v. Moss, supra.* As there is sufficient evidence in the record to support the trial court's decision, we will not overturn it. *Linley v. Hanson,* 173 Colo. 239, 477 P.2d 453 (1970).

■ The wife contends that it was error for the trial court not to reserve the power to modify its maintenance award. This is a discretionary decision, and we perceive no abuse.

■ As this is an award of maintenance in gross, it has the finality of a judgment, and since the trial court did not reserve such power to modify its maintenance award, it is not subject to modification. *In re Marriage of Gallegos,* 41 Colo.App. 116, 580 P.2d 838 (1978).

Our review of the record reveals that wife's only limitations at the time of trial were primarily emotional. She had recovered from heart surgery on schedule and was able to maintain good health with medication. Wife has skills as a seamstress and has been given two years maintenance by the court to achieve a position in which she could provide for herself. Thus, we cannot say that the court abused its discretion in not reserving a power to modify the award.

The parties' other contentions of error are without merit.

Accordingly, the judgment is affirmed.

PIERCE, J., concurs.

STERNBERG, J., concurs in part and dissents in part.

STERNBERG, Judge, concurring in part and dissenting in part:

I agree with Part I of the majority opinion, but disagree with Part II, and therefore dissent. In my view, the court should have either made its maintenance award

open ended or retained jurisdiction to modify the maintenance order if the situation justifies it. If the wife is or becomes unable to work, the husband, rather than the public through the welfare department, should help support her.

### A. *Circumstances Do Not Justify This Award*

The parties had been married for some 26 years. The husband's financial situation demonstrates a financial ability to pay periodic maintenance. The wife's employment history was very sketchy, involving work as a seamstress and housekeeper. She had not been regularly employed outside the home since 1960. In 1979, the wife's chronic rheumatic heart condition required open heart surgery resulting in the replacement of the aortic and mitral valves. She was not employed at the time of the hearing, and the question of when she might be gainfully employed was, at best, problematical because of her physical and attendant psychological problems, and her lack of skills. Her income is solely what she could earn from investment of a $50,000 asset awarded her in the property division, plus the $300 per month maintenance for two years.

In *Carlson v. Carlson,* 178 Colo. 283, 497 P.2d 1006 (1972), the court stated that:

"[I]n the absence of special circumstances which require or make a lump-sum award of alimony proper, or a compelling reason that necessitates the desirability for such an award, a lump-sum or gross award of alimony should not be made."

In my view no "special circumstances" or "compelling reasons" appear here to justify an award of maintenance in gross. To the contrary, the wife's skills and experience were negligible, and her health questionable. Thus, all circumstances militate against such an award in this case. *See In Re Marriage of Lodholm,* 35 Colo.App. 411, 536 P.2d 842 (1975).

An appropriate order here, in my opinion, would have been an award of maintenance for a fixed period, with the trial court specifically retaining jurisdiction to extend the period in which maintenance would be paid if the wife required support for longer than two years. Alternatively, the maintenance award should have been of indefinite duration, until death or remarriage, subject by law to possible modification under § 14–10–122, C.R.S. 1973. *See In Re Marriage of Wagner,* 44 Colo.App. 114, 612 P.2d 1147 (1980).

### B. *The Statute Allows Modification Of "Any" Maintenance Decree*

This issue would not be before us if it were not for this court's holding in *In Re Marriage of Gallegos,* 41 Colo.App. 116, 580 P.2d 838 (1978). In *Gallegos,* a division of this court interpreted § 14–10–122, C.R.S. 1973, in what I consider to be an unjustifiably limited manner. It held:

"[W]here ... maintenance is in a fixed and determinable amount to be paid either in a lump sum or is for a specific amount to be paid over a definite term unless the power to do so is expressly reserved by the court, it is alimony in gross and has the finality of a judgment, and thus, is not subject to modification on the basis of a change in circumstances."

This holding of *Gallegos* was made despite the language of § 14–10–122, C.R.S. 1973, which states:

"[T]he provisions of *any* decree respecting *maintenance* or support may be modified only as to installments accruing subsequent to the motion for modification and only upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable." (emphasis added)

I would construe the words "any decree respecting maintenance" as applying to *any* maintenance decrees, not just to open end decrees. *See In Re Marriage of Trohn,* 531 P.2d 985 (Colo.App.1975) (not selected for official publication). *Dame v. Dame,* 628 S.W.2d 625 (Ky.1982) (dissenting opinion). *See also Nash v. Nash,* 244 Ga. 749, 262 S.E.2d 64 (1979).

Consequently, in my view, *In Re Marriage of Gallegos, supra,* was wrongly decided, and should not be followed. To interpret § 14–10–122 as I urge would lead to

the socially desirable result of permitting trial courts to determine if there is a need for and ability to pay continued maintenance based upon the actual situation of the parties, rather than requiring it to speculate as to what their situation will be several years in the future. Especially is such speculation difficult where, as here, the court is attempting to determine if a woman who has not worked for a number of years and has few marketable job skills will be able to become employed, and whether she will recover sufficiently from open heart surgery to be able to support herself. As stated by the dissenting Justice in *Dame v. Dame, supra:*

> "[F]inality to litigation is a strong competing interest. However, . . . ensuring reasonable support for one with precarious financial security must hold sway even when the price is a subsequent court hearing."

### C. *The Award Here Should Not Be Considered Maintenance in Gross*

Finally, even if the *Gallegos* rule is followed so as to preclude modification of awards of maintenance in gross, I am not at all certain that this type of award—$300 per month for two years—should necessarily be considered as that kind of maintenance. Rather, the more appropriate analysis, in my view, is that contained in *Nash v. Nash, supra.* There, the court reasoned that only if the terms of the award indicate that the court intended it to be in the nature of a property division should it be considered maintenance in gross, and thus not subject to future modification. Relying on earlier cases, the *Nash* court pronounced the following formula for deciding whether periodic payments are subject to revision:

> "(a) A decree specifying periodic payments for an uncertain time (e.g., until death or remarriage) with no indication of gross amount is alimony and is revisable;
>
> (b) A decree specifying periodic payments for a given time with no indication of gross amount other than by multiplying the amount due by the number of payment periods is alimony and is revisable;

> (c) A decree specifying periodic payments to be made until a given sum (i.e., an amount stated) has been paid is division of property or payment of corpus and is not revisable."

I agree with this view. Paragraph (b) of this rule would apply here. Only if a maintenance award bears the attributes of a property division, *e.g.,* a lump sum to be payable in installments, or if it contains an indication from the court making the award that it is to be treated like property, should it be held not to be subject to future modification.

The award in this case bears all the marks of pure maintenance. If time shows that the trial court's apparent estimate of the future proves wrong and the wife cannot work because of lack of skills or problems attendant to her open heart surgery the trial court should be able to modify it under § 14–10–122, C.R.S.1973. On the other hand, if the wife remarries or becomes financially self sufficient during the two year period, the court should be able to end the maintenance sooner. Like any other decree of maintenance it should be subject to modification as to future installments if there is a change of circumstances.