In re the Marriage of Hildegard
SINN, Petitioner,

v.

Werner H. SINN, Respondent.

No. 83SC362.

Supreme Court of Colorado,
En Banc.

Feb. 25, 1985.

Martinez & Allman, Robert L. Allman, Denver, for petitioner.

Thomas E. Schaiberger, Aurora, for respondent.

ERICKSON, Chief Justice.

We granted certiorari to review *In re Marriage of Sinn*, 674 P.2d 988 (Colo.App. 1983), in which the court of appeals affirmed the district court's award of maintenance in a dissolution of marriage proceeding. In its decision, the court of appeals held that an award of maintenance for a fixed period of time is a "qualified form of maintenance in gross" that can only be modified if the trial court expressly reserves the power to do so. We conclude that the court of appeals' decision is inconsistent with the modification provisions of section 14–10–122, 6 C.R.S. (1973). We also hold that the district court abused its discretion in limiting the maintenance award to two years. We therefore reverse and remand with directions.

I.

The Arapahoe County District Court dissolved the marriage of Hildegard Sinn (petitioner) and Werner Sinn (respondent) on May 31, 1979. The district court also approved the parties' separation agreement regarding property division, maintenance and attorney's fees, and incorporated the agreement into the final decree. The agreement provided that respondent would pay petitioner $200 per month "spousal maintenance" for six months and required a hearing to review the issue of maintenance at the end of the six month period.[1]

In April 1980, the petitioner filed a motion seeking a continuation of spousal

---

1. The separation agreement contained the following provision for spousal maintenance:

*Spousal Maintenance:* Commencing with the 1st day of June, 1979, for a period of six (6) months, the Husband shall pay to the Wife the sum of $200.00 per month. Said sum is payable through the Registry of the Court, and shall continue for a period of six (6) months, death or remarriage of the Wife, whichever should first occur. The issue of maintenance shall be reviewed by the Court at the end of six (6) months.

maintenance. In support of her motion, petitioner stated that she had not recuperated from her recent open heart surgery and that she was incapable of supporting herself. The petitioner requested that the court award her permanent maintenance in an "amount sufficient to assist her with her necessary needs." The petitioner's motion was heard in February 1981, and the following findings were made: (1) that petitioner received $250 per month rental income from duplex property that had been awarded to her pursuant to the property settlement agreement; (2) that respondent's gross income was approximately $2,000.00 per month; (3) that respondent's take home pay after he paid various mortgages and loans was $1,036.00 per month; (4) that petitioner was suffering from emotional dysfunction; and (5) that petitioner needed financial assistance for a period of time in order for her to obtain part time or full time work that would be compatible with her level of job skills.

Based on its findings, the district court ordered the respondent to pay maintenance to the petitioner of $300.00 per month for two years and maintenance arrearages of $100.00 per month for one year.

Both parties appealed from the district court's order. The respondent appealed claiming that the district court abused its discretion by awarding the petitioner maintenance without requiring petitioner to establish that the original award of maintenance for six months was unconscionable.[2] The petitioner cross-appealed claiming that the district court erred by limiting maintenance to two years and also by not reserving the power to modify the award. The court of appeals rejected both parties' arguments, affirmed the two-year award of maintenance, and declared that the award had the finality of a judgment and is not subject to modification.

## II.

The court of appeals held that an award of maintenance for a fixed period of time is "maintenance in gross" and cannot be modified unless the trial court expressly reserves the power to modify the order. *Sinn,* 674 P.2d at 991. *See also Moss v. Moss,* 190 Colo. 491, 549 P.2d 404 (1976); *Carlson v. Carlson,* 178 Colo. 283, 497 P.2d 1006 (1972). In reaching its decision, the court of appeals assumed that the modification provisions of section 14–10–122 do not apply to those maintenance awards traditionally labeled as "alimony in gross." The court based its holding on its earlier decision in *In re Marriage of Gallegos,* 41 Colo.App. 116, 580 P.2d 838 (1978). In that case, the court of appeals held that:

> [W]here ... maintenance is in a fixed and determinable amount to be paid either in a lump sum or is for a specific amount to be paid over a definite term, unless the power to do so is expressly reserved by the court, it is alimony in gross and has the finality of judgment, and thus, is not subject to modification on the basis of a change in circumstances.

41 Colo.App. at 118, 580 P.2d at 840.

In *Gallegos,* the court of appeals rejected the wife's argument that the concept of "maintenance in gross" had been abrogated by Colorado's adoption of the Uniform Dissolution of Marriage Act (UDMA) in 1972, and concluded: "We do not interpret [section 14–10–122] as conferring upon the courts of this state a broader power to modify than existed prior to the statute." *Id.* at 118, 580 P.2d at 840. In our opinion, *Gallegos* is inconsistent with the modification provisions of section 14–10–122, and we overrule that decision.

Section 14–10–122 provides that "any decree respecting maintenance" may be modified upon a showing of "changed circumstances so substantial and continuing as to make the terms unconscionable." We construe the words "any decree" to mean *all* maintenance decrees, not just

---

**2.** The court of appeals rejected the respondent's argument and this issue is not before us on certiorari.

open-ended decrees. The statute draws no distinction between open-ended maintenance awards and awards of a fixed duration, and we see no sound basis for reading such a distinction into the statute. *See* H. Clark, *Law of Domestic Relations* § 14.9, 455–56 (1968).[3] In our view, section 14–10–122 authorizes the modification of those awards traditionally labeled as maintenance in gross, even though the decree does not expressly reserve the power to modify the order. *See Dame v. Dame*, 628 S.W.2d 625, 628 (Ky.1982) (Clayton, J., dissenting). *See also* R. Levy, *Uniform Marriage and Divorce Legislation: A Preliminary Analysis* 159–61 (1969).[4] Only where the parties have expressly agreed to preclude modification under section 14–10–112(6), should maintenance be incapable of modification.

■ Our conclusion that section 14–10–122 authorizes the modification of all maintenance awards, including periodic payments for a fixed duration, does not mean that all periodic payments should be classified as maintenance for the purposes of section 14–10–122. In many cases, either the parties or the court may utilize periodic payments as a means of property division. Where periodic payments are used as a means of effecting a division of property, modification should only occur under the more stringent standards governing property settlements.[5] Thus, we must determine whether the periodic payments in the present case are spousal maintenance or a property division.

3. Professor Clark describes "alimony in gross" as a fictional device employed by courts to insure the finality of maintenance awards. In Professor Clark's opinion, "alimony in gross" should be modifiable like all other forms of maintenance. Clark, *supra* at 455.

4. We believe our interpretation of section 14–10–122 is also consistent with public policy and the liberal objectives of the UDMA. *See* § 14–10–102, 6 C.R.S. (1973). A trial court should be free to determine if there is a need for and ability to pay maintenance based upon the *actual situation* of the parties at the time the request is made. Trial courts should not be required to speculate or guess as to what the parties' financial situation will be several years in the future,

■ We believe that the characterization of periodic payments as maintenance, on the one hand, or property division, on the other, should be based on the purpose of the payments as determined by the totality of the circumstances. If the payments are specified to accomplish a just apportionment of marital property over time, they are in the nature of property division. If they are for spousal support, they constitute maintenance. In the present case, the periodic payments have the attributes of pure maintenance. The payments were intended to ease the petitioner's transition to the work force and to prevent the petitioner from becoming dependent on public support. In our view, the periodic payments here are maintenance and are modifiable.

### III.

The petitioner also claims that the trial court abused its discretion by limiting the maintenance award to two years. We agree.

■ Although a trial court has broad discretion in determining the amount and duration of a maintenance award, a trial court's order will not be upheld if it produces an unfair or inequitable result. *See, e.g., In re Marriage of Wagner*, 44 Colo. App. 114, 612 P.2d 1147 (1980); *In re Marriage of Lodholm*, 35 Colo.App. 411, 536 P.2d 842 (1975). In determining the appropriate amount and duration of any maintenance award, the court must consider:

[A]ll relevant factors including:

with no possibility of relief should the anticipated events not occur. *Sinn*, 674 P.2d at 992–93 (Sternberg, J., dissenting); Daley & Hinds, *The Continued Jurisdiction of the Court of Modify Maintenance*, 13 Colo.Law. 62 (1984). *But see Dame v. Dame*, 628 S.W.2d 625 (Ky.1982); *Lindsay v. Lindsay*, 155 Ariz. 322, 565 P.2d 199 (App. 1977).

5. Section 14–10–122 establishes the following standards for courts to apply in modifying a property settlement:

The provisions as to property disposition may not be revoked or modified unless the court finds the existence of conditions that justify the reopening of a judgment.

(a) The financial resources of the party seeking maintenance ...;

(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(c) The standard of living established during the marriage;

(d) The duration of the marriage;

(e) The age and the physical and emotional condition of the spouse seeking maintenance; and

(f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

§ 14–10–114(2)(a) to (2)(f).

■ Applying the above criteria to the facts of this case, we believe the trial court abused its discretion in limiting the maintenance award to two years. The petitioner was over fifty years old at the time of the hearing and had undergone major open heart surgery in 1979 that resulted in the replacement of her mitral and aortic valves. The petitioner's vocal cords had been damaged during her heart surgery making it difficult for her to communicate. The petitioner also suffered from "emotional dysfunction" and was undergoing psychiatric treatment at the time of the hearing.

In addition, the record establishes that petitioner had not completed high school and that she had few marketable job skills. The petitioner's primary skills after 24 years of marriage were those of a homemaker and a mother. Although she had worked in the past as a seamstress, she had not held a full time job outside the home since 1960. Her only source of income consisted of $250.00 per month rental income from a duplex that had been awarded to her in the division of marital property.

In short, the petitioner here had few marketable skills, a difficulty in communi-cating, significant physical and emotional problems, and few tangible assets. The respondent, on the other hand, had been employed for over 20 years as a design engineer and was earning approximately $24,000 a year at the time of the hearing. His financial affidavit demonstrated an ability to pay the maintenance his wife required.

In awarding petitioner maintenance for only two years, the district court assumed that the petitioner would be self-sufficient after that period. We believe the district court's assumption is unrealistic in light of the evidence presented at the hearing. Not only does the district court's order disregard the petitioner's substantial health problems, it also ignores the limited job opportunities available to an unskilled middle-aged woman who has long been removed from the job market. *See Wagner,* 612 P.2d at 1148; *Lodholm,* 35 Colo.App. at 414, 536 P.2d at 844–45. In light of these facts, we hold that the district court abused its discretion in limiting the maintenance period to two years. *See* Annot., 97 A.L.R.3d 740 (1980); 24 Am.Jur.2d *Divorce & Separation* §§ 747, 748 (1983).[6]

■ We also do not believe that the modification provisions of section 14–10–122 can be relied upon to uphold the two-year maintenance award in the present case. Although section 14–10–122 does allow modification of any maintenance decree, that statute places a heavy burden on the party seeking modification because that party must show "changed circumstances so substantial and continuing as to make the terms unconscionable." In our view, it is inappropriate to require the dependent spouse to return to court and assume that burden, where, as here, it appears likely that the need for maintenance will continue past the designated maintenance period. *Lodholm,* 35 Colo.App. at 415, 536 P.2d at 845.

---

**6.** Courts have generally held that short term, or "rehabilitative alimony," is inappropriate where the marriage has been of long duration and the dependent spouse has significant health problems or has minimal employment skills. *See,*  *e.g., Lutgert v. Lutgert,* 362 So.2d 58 (Fla.Dist.Ct. App.1978); *Wikle v. Wikle,* 390 So.2d 297 (Ala. Civ.App.1980); *In re Marriage of Plaster,* 55 Or. App. 700, 639 P.2d 1287 (1982).

For the foregoing reasons, we believe the district court abused its discretion in limiting the maintenance period to two years. We therefore reverse the court of appeals' decision and remand the case to the court of appeals with directions that it be returned to the district court for further proceedings consistent with this opinion.