T.C. Summary Opinion 2004-50

UNITED STATES TAX COURT

KENNETH E. GILMORE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5326-01S.          Filed April 29, 2004.

Kenneth E. Gilmore, pro se.

<u>Mary T. Klaasen</u>, for respondent.


PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency and additions to tax in petitioner's Federal income tax as follows:

| | | Additions to Tax[1] | | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654(a) |
| 1996 | $6,918 | $1,557 | $1,384 | $368 |

[1] The following figures are rounded to the nearest dollar.

After concessions,[1] the issues for decision are: (1) Whether petitioner may deduct, as alimony under section 215, military retirement pension payments made to his former wife; (2) if the payments are not deductible under section 215, whether petitioner may nevertheless exclude from his income any portion of his military retirement pension paid to his former wife; (3) whether petitioner is liable for the addition to tax under section 6651(a)(1) for failure to file a Federal income tax return; and (4) whether petitioner is liable for the addition to tax under section 6654(a) for an underpayment of estimated tax.

## Background

Some of the facts are stipulated, and they are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of filing his petition, petitioner resided in Palmer Lake, Colorado.

---

[1] Petitioner concedes that he received $39,900 of military retirement pension income and $18 of interest income and that he is not entitled to deductions claimed on Schedule E, Supplemental Income and Loss, and Schedule K-1, Partner's Share of Income, Credits, Deductions, etc. Respondent concedes the addition to tax under sec. 6651(a)(2) for failure to pay Federal income tax.

Petitioner is a retired military officer of the United States Air Force. Petitioner and Mary Alice Warriner (Ms. Warriner) married on September 10, 1981, and separated in September 1993. The District Court, El Paso County, State of Colorado (Colorado court) entered a Temporary Order on October 26, 1995. The same court entered Final Orders and Decree of Dissolution on February 1, 1996. The Final Orders were a part of, and incorporated into, the Decree of Dissolution.

The Final Orders provide, in pertinent part:

4.   The parties had accumulated several pieces of real property in Colorado during this marriage. Over the course of the last years of the marriage, * * * [petitioner] wasted the marital estate by failing to pay mortgages and bills when due from the proceeds of rent checks, allowing several foreclosures, not responding to creditor summons, converting assets into investments outside the marital estate, and then not informing * * * [Ms. Warriner] of these actions until default or judgment entered. The Court finds that the total loss amounted to $454,150.00 in assets, costs, and judgments accumulated over the last years of the marriage.

5.   The real property presently titled in the name of * * * [Ms. Warriner], acquired during the marriage has a net asset value of $111,000.

6.   The total net loss of marital assets is therefore is [sic] $343,150.00. * * * [Ms. Warriner] is entitled to recover one half of this amount, or $171,575.00 as a property settlement from [Ms. Warriner] [sic].

7.   There exist [sic] a military retirement which is a part of the marital estate and is marital property subject to equitable division.

8. [Petitioner's] ability to pay on debt, satisfy financial obligations, or otherwise act in a financial

[sic] responsible manner is problematic and highly unlikely in view of past history.

* * * * * * *

17. [Petitioner] is a retired military officer with 23 years total commissioned active duty. His military retirement is an asset of the marital estate. * * * [Ms. Warriner] has no retirement fund. As a consequence of the waste of marital assets, specifically the loss of accumulated investment property and the marital home, and considering the unlikely cooperation of * * * [petitioner] to repay * * * [Ms. Warriner] her losses, and the overall division of property in this case, this Court therefore makes an equitable division of the military retirement as follows:

    a. Based upon the current amounts of annual and monthly military retirement pay, and for the next 15 years, * * * [Ms. Warriner] shall receive a total 63.31% of the current military retirement as her equitable division of the marital property. At present known monthly rates, this amount equals $2,065.17 per month. This amount includes the 13.04% division of the pension ordered in Temporary Orders; this amount continus [sic] indefinitely. The addtional [sic] 50.27% represents the dollar amount of property settlement owed [to] * * * [Ms. Warriner] by * * * [petitioner], amortized over 15 years at the statutory rate of 8% interest, an amount she is entitled by law.

    b. Payments should be made monthly directly to * * * [Ms. Warriner]. The Court orders a Wage Assignment or Garnishment or any other instrument required by the Cleveland Military Pay Center to execute this Order.

    c. At the termination of 15 years of payment at the above noted rate, or 180 monthly payments, the percent of military retirement awarded to * * * [Ms. Warriner] changes to 13.04%.

* * * * * * *

    f. If possible and pursuant to the rules and laws governing the Cleveland Military Pay Center, this division of military retirement is Ordered to be apportioned into a separate account on behalf of * * *

[Ms. Warriner], with separate tax withholding, statements, and correspondence sent to her independent of any third party or the Court.

* * * * * * *

20. Neither party is awarded maintenance.

Subsequent to the Colorado court's entering the Final Orders, Ms. Warriner's counsel discovered that direct payments to Ms. Warriner from petitioner's military retirement pension, as directed by paragraph 17b of the Final Orders, were not permitted pursuant to the Uniformed Services Former Spouses' Protection Act (USFSPA), 10 U.S.C. sec. 1408 (2000).[2]

Ms. Warriner submitted a Motion to amend Final Orders to the Colorado court, and an Amended Order ("Amended Order"), issued on May 9, 1996, was incorporated into and amended the Decree of Dissolution and Final Orders entered on February 1, 1996. The Amended Order provided in pertinent part:

2. [Ms. Warriner] is entitled to a [sic] equitable division of the marital estate yet there are no known additional assets in possession of * * * [petitioner] that are readily discoverable and the Court finds * * * [petitioner] has failed to comply with any disclosure requirements.

THEREFORE THIS COURT ORDERS:

3. That * * * [Ms. Warriner] is entitled to an award of spousal maintenance as follows:

---

[2] USFSPA does not allow for direct payments to Ms. Warriner because she and petitioner were not married for 10 years or more during which petitioner performed at least 10 years of military service. See 10 U.S.C. sec. 1408(d)(2) (2000).

a.    Permanent spousal maintenance is Ordered paid by * * * [petitioner] to * * * [Ms. Warriner] in the amount of $452.00 per month.  This amount continues regardless of the future marital status of * * * [Ms. Warriner].  * * *[Ms. Warriner] is further entitled to collect as part of this spousal maintenance award that statutory interest of 8% per annum on unpaid installments of this amount previously Ordered and not paid by [petitioner].

b.    Additional spousal maintenance is ordered in the amount of $1,300 per month until a total amount of $171,575.00, plus statutory interest (per annum) on any unpaid balance accruing from 1 February 1996 is paid in full.  The amount Ordered in this subparagraph shall not be effected [sic] by marriage or death of either party.  * * * [Petitioner] may pay this amount in other monthly payments or in full with a lump sum payment to include all interest accrued from 1 February, 1996 to date of final payment.  At such time principal of $171,575.00 is paid in full, with accrued interest, the Order for spousal maintenance payments for this subparagraph will be satisfied and payments will cease.

c.    Total spousal maintenance to be paid monthly by this order is $1,752 per month pursuant to the terms noted above.

Pursuant to the Amended Order and 42 U.S.C. section 659 (2000),[3] the Defense Finance and Accounting Service, Cleveland Center, Garnishment Operations, paid Ms. Warriner $1,752 per month of petitioner's military retirement pension between June

---

[3]  The United States is required to withhold moneys due from the United States to any individual, including members of the Armed Forces, to enforce the legal obligations of any individual to provide alimony or child support.  42 U.S.C. sec. 659(a) (2000).  Pursuant to 42 U.S.C. sec. 659(i)(3)(B)(ii), alimony does not include "any payment or transfer of property or its value by an individual to the spouse or former spouse of the individual in compliance with any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses."

and December 1996, the total being $12,264, as required by paragraph 3c.

Petitioner timely filed, and respondent granted, an extension of time to file his 1996 Federal income tax return until August 15, 1997. On September 14, 1998, respondent prepared a "Proposed Individual Income Tax Assessment" based on 1996 Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., which reflected that petitioner received $39,900 of retirement proceeds. Petitioner filed his 1996 return on December 19, 2001. In that return, petitioner reported $39,900 of pension income and claimed a deduction in the amount of $12,264 as alimony payments to Ms. Warriner. Respondent disallowed the deduction for the alimony payments.

Discussion

1. Payments to Ms. Warriner

We must decide the proper characterization of the $12,264 of petitioner's military retirement pension paid to Ms. Warriner. Petitioner argues these payments constitute deductible alimony, and respondent claims these payments constitute a division of marital property.[4] Respondent maintains the payments represent a

---

[4] The record is silent as to the position Ms. Warriner took in regard to the payments on her 1996 Federal income tax return. Additionally, the record is silent as to whether the Defense Finance and Accounting Service prepared a separate account and

(continued...)

property settlement, and as such, the payments do not give rise to an alimony deduction.[5]

Section 7491(a) provides that the burden of proof shifts to respondent under certain specified conditions.  Petitioner has not established that the burden of proof has shifted, and in any event, the resolution of the issue of the nature of the payments in question does not depend upon who has the burden of proof.

Alimony or separate maintenance payments generally are deductible by the payor spouse.  Sec. 215.  Alimony or separate maintenance payments are defined by section 71(b), which provides in part:

> SEC. 71(b) Alimony or Separate Maintenance Payments Defined.--For purposes of this section--
>
> (1) In general.--The term "alimony or separate maintenance payment" means any payment in cash if--

---

[4](...continued)
separate tax withholding for payments to Ms. Warriner.

[5]  Respondent argues that a property settlement was "clearly intended by the divorce court".  The intended purpose behind the payments is not controlling.  Nelson v. Commissioner, T.C. Memo. 1998-268.  Further, "labels attached to payments mandated by a decree of divorce or marriage settlement agreement are not controlling".  Benedict v. Commissioner, 82 T.C. 573, 577 (1984).  A payment must satisfy all the requirements of sec. 71(b) to qualify as alimony.  See Jaffe v. Commissioner, T.C. Memo. 1999-196.  Congress amended sec. 71 in the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 422(a), 98 Stat. 494. The purpose behind the amendment was to "eliminate the subjective inquiries into intent and the nature of payments that had plagued the courts in favor of a simpler, more objective test."  Hoover v. Commissioner, 102 F.3d 842, 845 (6th Cir. 1996), affg. T.C. Memo. 1995-183.

(A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

(B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,

(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

It is clear the requirements of subparagraphs (A) and (C) of section 71(b) are satisfied. Ms. Warriner received the cash payments pursuant to the Amended Order and Decree of Dissolution issued by the Colorado court, and she and petitioner were not members of the same household.

We now consider section 71(b)(1)(B), which provides that a payment will not be alimony if the divorce or separation instrument designates the payment as not includable in gross income and not allowable as an alimony deduction. The designation in the divorce or separation instrument "need not specifically refer to sections 71 and 215". Estate of Goldman v.

Commissioner, 112 T.C. 317, 323 (1999), affd. without published opinion 242 F.3d 390 (10th Cir. 2000). However, the "instrument must contain a clear, explicit and express direction" that the payments are not to be treated as alimony. Richardson v. Commissioner, 125 F.3d 551, 556 (7th Cir. 1997), affg. T.C. Memo. 1995-554. The Amended Order does not contain such language, and section 71(b)(1)(B) is satisfied.

We now consider section 71(b)(1)(D). To qualify as alimony, petitioner's obligation must terminate at the death of Ms. Warriner. In order to determine whether an obligation exists, the terms of the applicable instrument must be considered, or if the instrument is silent on the matter, we look to State law. Kean v. Commissioner, T.C. Memo. 2003-163, supplemented by T.C. Memo. 2003-275.

Paragraphs 3a and 3b of the Amended Order provide for two categories of payments to Ms. Warriner. First, paragraph 3a provides that the "amount of $452.00 per month * * * continues regardless of the future marital status of * * * [Ms. Warriner]." The Amended Order does not address whether payments are to continue after the death of Ms. Warriner.

Under Kean, we continue our analysis by looking to Colorado law. In 1971, Colorado enacted the Uniform Dissolution of Marriage Act (UDMA), Colo. Rev. Stat. secs. 14-10-101 through 14-10-133 (2003). The UDMA provides that unless "otherwise agreed

in writing or expressly provided in the decree, the obligation to pay future maintenance[6] is terminated upon the death of either party". Colo. Rev. Stat. sec. 14-10-122(2) (2003); see also <u>Menor v. Menor</u>, 391 P.2d 473, 477 (Colo. 1964). The Amended Order does not expressly provide the payments would continue after the death of Ms. Warriner, and thus without such language, those payments will terminate at her death. We conclude that section 71(b)(1)(D) is satisfied for the payments provided for in paragraph 3a of the Amended Order, and petitioner is entitled to a deduction under section 215 for such payments.

Turning to paragraph 3b of the Amended Order, the "Additional spousal maintenance [which] is ordered in the amount of $1,300 per month until a total amount of $171,575.00 * * * shall not be effected [sic] by marriage or death of either party." Under the analysis of <u>Kean</u>, the Amended Order specifically provides that the payments would continue after the death of Ms. Warriner, thus disqualifying the payment under section 71(b)(1)(D).[7] Petitioner is not entitled to a deduction

---

[6] For purposes of the tax laws of the State of Colorado or of any other jurisdiction, the term "maintenance" includes the term "alimony". Colo. Rev. Stat. sec. 14-10-103(1) (2003).

[7] In general, payments to a former spouse terminate upon the death of the former spouse. See Colo. Rev. Stat. sec. 14-10-122(2) (2003). However, if agreed in writing or expressly provided in the decree, payments to a former spouse may continue after his or her death under Colorado law. See <u>id.</u>

under section 215 for the payments made under paragraph 3b of the Amended Order.

2. <u>Exclusion of Military Retirement Pension Paid to Ms. Warriner</u>

Having concluded that the amounts paid to Ms. Warriner pursuant to paragraph 3b of the Amended Order are not deductible under section 215 as alimony, we now turn to whether these amounts are excludable from petitioner's income. Gross income includes payments from military retirement pensions. Sec. 61(a)(11). However, it "is axiomatic in Federal tax law that income is taxable to the legal owner of the * * * property producing the income." <u>Miles Prod. Co. v. Commissioner</u>, T.C. Memo. 1969-274, affd. 457 F.2d 1150 (5th Cir. 1972); see also <u>Helvering v. Clifford</u>, 309 U.S. 331 (1940). Military retirement payments are "gross income to the party who owns the right to those payments pursuant to the division of property in a divorce." <u>Pfister v. Commissioner</u>, T.C. Memo. 2002-198, affd. 359 F.3d 352 (4th Cir. 2004); see also <u>Weir v. Commissioner</u>, T.C. Memo. 2001-184; <u>Eatinger v. Commissioner</u>, T.C. Memo. 1990-310; <u>Lowe v. Commissioner</u>, T.C. Memo. 1981-350. Thus, we must determine whether petitioner or Ms. Warriner owns the right to the payments of petitioner's military retirement pension.

Pursuant to the USFSPA, State courts "may treat disposable retired pay payable to a member * * * either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." 10

U.S.C. sec. 1408(c)(1) (2004).  Under Colorado law, "vested and matured military retirement pay, which has accrued during all or part of a marriage, constitutes marital property subject to equitable division in a dissolution proceeding."  In re Marriage of Gallo, 752 P.2d 47, 54 (Colo. 1988).

Turning to the Amended Order, the Colorado court did not divide petitioner's military retirement pension, but rather awarded Ms. Warriner "spousal maintenance".  The Colorado court clearly contemplated the division of petitioner's military retirement pension, as first effectuated in the Final Orders. Additionally, paragraph 6 of the Final Orders awarded Ms. Warriner a $171,575 property settlement as a recovery of wasted marital assets, notably the same amount the Colorado court ultimately awarded Ms. Warriner as alimony in gross[8] in paragraph 3b of the Amended Order.  However, as expressed in paragraphs 4 and 8 of the Final Orders, the Colorado court found it necessary to provide for direct payments to Ms. Warriner from petitioner's military retirement pension.  The only method available for direct payments to Ms. Warriner was pursuant to 42 U.S.C. section

_____

[8]  The Colorado court has the discretion to award periodic alimony or alimony in gross (lump-sum alimony).  Alimony in gross can only be awarded when special circumstances or a compelling reason necessitates such an award.  Carlson v. Carlson, 497 P.2d 1006, 1010 (Colo. 1972).  Alimony in gross is not unacceptable per se.  Moss v. Moss, 549 P.2d 404, 406 (Colo. 1976).  The Colorado court presumably considered the special circumstances of petitioner's problematic financial history, as explained in paragraphs 4, 8, and 17 of the Final Orders.

659(a), which does not provide for the actual transfer of petitioner's military retirement pension. Without a property division pursuant to a dissolution proceeding, petitioner is the sole owner of his military retirement pension. See Pfister v. Commissioner, supra (former wife "shall be owner of, and receive, one-half of husband's disposable retired or retainer pay"); Porter v. Commissioner, T.C. Memo. 1996-475 (former wife received "as her sole and separate property" one-half "of the Air Force Retiree Monthly Pay"); Lowe v. Commissioner, supra (former wife awarded portion of military retirement pension "as a property interest" with full "property interest(s) * * * permissible by law"). We hold petitioner may not exclude from income the amounts paid to Ms. Warriner pursuant to paragraph 3b of the Amended Order.

3. Addition to Tax Under Section 6651(a)(1) for Failure To File

If a Federal income tax return is not timely filed, an addition to tax will be assessed "unless it is shown that such failure is due to reasonable cause and not due to willful neglect". Sec. 6651(a)(1). A delay is due to reasonable cause if "the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time". Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.; see also United States v. Boyle, 469 U.S. 241, 243 (1985).

Respondent's records reflect petitioner filed his return on December 19, 2001, and we conclude petitioner filed on that date.

Petitioner testified he "filed a return every year", including one for tax year 1996, which he mailed on August 15, 1997. However, he did not provide any supporting documentary evidence, such as a certified mail receipt,[9] to establish he filed the return on that date. Nor did petitioner provide any evidence to establish he had reasonable cause for the failure to timely file.[10] Respondent's determination as to the addition to tax under section 6651(a) is sustained.

4. Addition to Tax Under Section 6654(a) for Failure To Pay Estimated Tax

Section 6654(a) provides for an addition to tax "in the case of any underpayment of estimated tax by an individual". This addition to tax is mandatory unless petitioner shows that one of the statutorily provided exceptions applies. See sec. 6654(e); Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980). There is no exception for reasonable cause or lack of willful neglect. Estate of Ruben v. Commissioner, 33 T.C. 1071, 1072 (1960).

Petitioner did not remit any estimated tax payments for 1996

---

[9] If a taxpayer sends a return "by registered mail or certified mail, proof that the * * * [return] was properly registered or that a postmark certified mail sender's receipt was properly issued * * * shall constitute prima facie evidence that the * * * [return] was delivered". Sec. 301.7502-1(d), Proced. & Admin. Regs.

[10] Respondent has the burden of production. Sec. 7491(c). The burden of showing reasonable cause under sec. 6651(a) remains on petitioner. Higbee v. Commissioner, 116 T.C. 438, 446-448 (2001).

and has not shown that any of the statutory exceptions are applicable.[11]  Respondent's determination as to the addition to tax under section 6654(a) is sustained.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155.</u>

---

[11]  The burden remains upon petitioner to establish the applicability of any exceptions.  <u>Higbee v. Commissioner</u>, <u>supra</u> at 446; <u>Spurlock v. Commissioner</u>, T.C. Memo. 2003-248.