SYLVESTER E. HARPER *v.* AMARYLLIS M. HARPER

[No. 1609, September Term, 1980.]

*Decided July 10, 1981.*

The cause was argued before WILNER, COUCH and MacDANIEL, JJ.

*Jeffrey Lee Greenspan* and *Elana Rhodes Byrd* for appellant.

*Steven R. Migdal,* with whom were *Manis, Wilkinson & Snider, Chartered* on the brief, for appellee.

COUCH, J., delivered the opinion of the Court.

On November 10, 1980, the Circuit Court for Anne Arundel County granted a divorce *a vinculo matrimonii* to Amaryllis M. Harper, the appellee. The chancellor (Lerner, J.) also declared certain real property owned by Mr. Harper, the appellant, to be marital property and ordered its sale in lieu of partition, with the proceeds therefrom to be shared by the Harpers equally.

Four questions are presented for our review, as set forth below:

"1. Whether or not the Hon. Eugene M. Lerner, Judge, Circuit Court for Anne Arundel County, Maryland, abused his discretion by not recusing himself at the trial of this case and by refusing to return the case to the assignment office to await reassignment to a visiting judge from a court other than the Circuit Court for Anne Arundel County, Maryland.

2. Whether or not the trial court erred in declaring one of three lots of real property, titled exclusively in the name of Sylvester E. Harper, together with a house located on said lot, to be marital property and thus subject to equitable distribution pursuant to Maryland Courts and Judicial Proceedings Code Annotated, Section 3-6A-01 (e).

3. Whether or not the trial court erred in ordering the sale in lieu of partition of the real property titled solely in the name of Sylvester E. Harper, rather than, assuming this property was marital property, determining the value of such property and making a monetary award in order to adjust the equities of the parties, as required by Maryland Courts and Judicial Proceedings Code Annotated, Section 3-6A-05 (b).

4. Whether or not the trial court erred in failing to make a monetary award to adjust the equities of the parties and thus failed to take into account the equities, liabilities and property interests held by each party exclusive of any ownership of real property.

(1 a)

### Change of venue

Because both Mrs. Harper and a daughter of the marriage, Kim Harper, were employed in the court system in Anne Arundel County, Mr. Harper filed a motion for a change of venue, which was denied. A subsequent pleading was filed, entitled "Motion for Change of Venue," seeking alternative relief for the matter to be heard by a "visiting judge" or a recusal of any judge with whom Mrs. Harper and her family and associates had direct employment or social relationships. This motion was likewise denied by Judge Lerner, who then heard the case. Appellant contends it was error to do so.

Appellant concedes that the "right" of removal applies only to actions at law and not to actions in equity. *See Ezersky v. Ezersky,* 40 Md. App. 713, 394 A.2d 1225 (1978). Nevertheless, he appears to contend that the chancellor had the discretionary power to cause the case to be removed. In *Ezersky,* however, we specifically held that:

"... the common law discretionary power of removal is never available in an equity or divorce case. As indicated above, this discretionary power originated in the common law Court of King's Bench. It has, accordingly, been inherited by our common law courts. Our equity courts, on the other hand, find their origin in the Court of Chancery and, in the case of divorce, in the Ecclesiastical Courts, *Dougherty v. Dougherty,* 187 Md. 21, 48 A.2d 451 (1946). There is no indication that these English courts exercised a discretionary power of

removal, and we are not free to give their successors such a power." *Id.* at 718-719.

Thus there was no error in denying appellant's motion for a change of venue.

### (1 b)

### *Right of recusal*

The appellant alternatively argues that the chancellor should have recused himself and had the matter heard by a visiting judge from another county. Under the circumstances present here, we find no error. Whether to recuse himself is a matter within the discretion of the court, *Marzullo v. Kovens Furniture Co.,* 253 Md. 274, 252 A.2d 822 (1969), and will not be disturbed on appeal except for an abuse of that discretion. The record shows that Judge Lerner had met Mrs. Harper only once, when he was introduced to her outside the courthouse by Kim, who was employed by Judge Wray. He only knew Kim by sight and that she worked for Judge Wray. We perceive no such connection between Judge Lerner and the Harpers as would indicate that because thereof he should have recused himself. So far as assigning the matter to a visiting judge, it is clear Judge Lerner advised appellant that there would not be one that day and that appellant's counsel opted, in the interest of time, to proceed with Judge Lerner. We see no error on this issue.

### (2)

### *Declaration of Marital Property*

In 1950, prior to his marriage to Mrs. Harper in 1951, Mr. Harper purchased a lot under a land installment contract and made all the monthly payments thereon; this lot was titled in his name alone. In 1967 Mr. Harper designed a house, which was then erected on his lot. While he has again made all the mortgage payments on the house, Mrs. Harper

is obligated thereunder. But see *Wimmer v. Wimmer,* 287 Md. 663, 414 A.2d 1254 (1980). Mrs. Harper also testified that four hundred of the five hundred dollar down payment on a previous house the parties acquired was provided by her mother and that the proceeds from the sale of that house were used to help finance the house built in 1967. The chancellor, in concluding that the lot and house were marital property as defined in Secs. 3-6A-01 (e) [1] and 3-6A-04 [2] of the Cts. Art. of the Maryland Code, stated:

"Fourth, the Court resolves the question of ownership of real property located at 1206 Louis Avenue, Annapolis, Maryland, pursuant to Section 3-6A-04 of the Courts and Judicial Proceedings Article of The Annotated Code of Maryland. The said real property consists of the parties' marital home and two adjacent lots.

The Respondent contends that the lot upon which the home is situated and the home itself should not be considered as marital property. The Respondent argues that he acquired the lot itself prior to his marriage and that, with respect to the house itself, he contends that because he alone made the financial contributions, drew up the plans and physically constructed it himself, the house should not be considered marital property for the purpose of

---

**1.** Section 3-6A-01 (e):

"(e) *Marital property.* — 'Marital property' is all property, however titled, acquired by either or both spouses during their marriage. It does not include property acquired prior to the marriage, property acquired by inheritance or gift from a third party, or property excluded by valid agreement or property directly traceable to any of these sources."

**2.** Section 3-6A-04:

"(a) When granting an absolute divorce or annulment, the court may resolve any dispute between the spouses with respect to the ownership of real property. However, the court may not transfer the ownership of real property from one spouse to the other.

(b) In accordance with the court's determination of the ownership of real property, the court may:

(1) Grant a decree which states what the ownership interest of each spouse is and

(2) As to any jointly owned property, order a partition or sale in lieu of partition and a division of the proceeds."

determining ownership and ordering a sale with an equitable distribution of the proceeds. The Respondent also contends that the two adjacent lots acquired during his marriage should not be considered as marital property since he made the sole financial contributions toward their purchase.

The Court finds that the Respondent's position is not legally tenable. As concerns the lot upon which the house is situated, the evidence in this case clearly established that the said lot was acquired by the Respondent under an installment contract of purchase prior to his marriage but that he completed payments and gained an unencumbered title to the lot during his marriage to the Complainant. Similarly as concerns construction of the house itself, the evidence has shown that the Respondent designed and built it during his marriage. With regard to the two adjacent lots, it is undisputed that these lots were acquired by the Respondent during his marriage. In making a determination of ownership of real property under the applicable statutes upon granting a decree of divorce, the Court is guided by several factors including the contributions, both monetary and nonmonetary, made by each party to the well-being of the family; the value of the property interests of each spouse; the circumstances contributing to the estrangement of the parties; the duration of the marriage; the age and physical condition of the parties; and how and when the specific marital property was acquired. In this case, it is true that the Respondent provided the bulk of financial contributions toward acquiring the real property in question, however, the Complainant, as a wife and mother of some twenty-nine (29) years, made substantial nonmonetary contributions toward the marriage and the family during the time the said real property was acquired. Furthermore, this Court notes that the estrangement of the parties

stemmed from the Respondent's cruel and abusive conduct toward the Complainant resulting in a divorce a mensa for constructive desertion. The length of the marriage in this case is considerable, spanning twenty-nine years of the parties' lives. The Court has also weighed the other factors mentioned above and concludes that the real property in question is marital property in which each spouse is entitled to a one-half share. For this reason the Court shall order a sale in lieu of partition of the said real property with an equitable distribution of the proceeds as prayed for by the Complainant."

The thrust of appellant's argument on this issue is that since he acquired the lot, upon which the house was built, before the marriage, and since the house constituted a permanent improvement thereto, both the house and lot do not meet the statutory definition of marital property and thus the chancellor erred in concluding that this property was marital property. We disagree.

With respect to the lot, while Mr. Harper had equitable title thereto prior to the marriage, see *Kinsey v. Drury,* 146 Md. 227, 126 A. 125 (1924), *Kingsley v. Makay,* 253 Md. 24, 251 A.2d 585 (1969), it is clear that he acquired legal title after the marriage. It would appear, in fact, that since the marriage took place within a year of his execution of the land installment contract, the bulk of payment thereon took place after the marriage. In our view the lot was acquired during the marriage within the meaning of Cts. Art. Sec. 3-6A-01.[3]

---

**3.** *See* State Roads Commission v. Orleans, 239 Md. 368, 376-377, 211 A.2d 715 (1965), in which the Court of Appeals, in a condemnation case, held that the word "acquire" means to become an owner of real property by obtaining legal title, rather than mere possession.

*See also,* Levi, The Tax Consequences of the Maryland Marital Property Act, 9 U. Balt. L. Rev. 12, 15-16 n. 17 (1979), discussing the argument that real property owned by a spouse prior to marriage but subject to a mortgage, may be deemed marital property if the mortgage is paid off with marital property funds.

With respect to the house built on the lot, after the parties had been married some sixteen years, it constituted a permanent improvement upon the lot; in fact, title in Mr. Harper's name was never changed although the parties talked about making that change. Having concluded the chancellor was correct in finding the lot to be marital property, it necessarily follows that the house erected thereon after the marriage of the parties would likewise, under the facts present here, be marital property. Indeed, not to conclude thusly would frustrate the very purpose of the marital property distribution act, the preamble of which states:

> "The General Assembly declares that it is the policy of this State that marriage is a union between a man and a woman having equal rights under the law. Both spouses owe a duty to contribute his or her best efforts to the marriage, and both, by entering into the marriage, undertake to benefit both spouses and any children they may have.
>
> The General Assembly declares further that it is the policy of this State that when a marriage is dissolved the property interests of the spouses should be adjusted fairly and equitably, with careful consideration being given to both monetary and nonmonetary contributions made by the respective spouses to the well-being of the family, and further, that if there are minor children in the family their interests must be given particular and favorable attention."

The chancellor committed no error in this regard.

(3)

### Sale in Lieu of Partition

As seen above, the chancellor, as part of his decree, determined the house and lot to be marital property, set the

parties' interest at one-half each, and ordered sale in lieu of partition with appropriate distribution to them of the proceeds. Appellant contends that the chancellor erred because the statute permits sale in lieu of partition of any *jointly* owned property. Cts. Art., § 3-6A-04. He further argues that it is clear only he held title to the property. Furthermore, he argues, the statute prohibits the court from transferring the ownership from one party to another. We agree with appellant. The statute is clear and the chancellor erred in this regard. Upon remand the chancellor should follow the guidelines provided in Sec. 3-6A-05 (b) of the Courts Article.

(4)

### The Failure to Make Monetary Award

Appellant's last assault on the chancellor's decree is that he failed to consider the "equities, liabilities, and property interests held by each party exclusive of real property." We have reviewed the record and the chancellor's opinion and find it difficult to understand how this contention can be made. The chancellor did just exactly what appellant contends he did not do. We do not understand appellant to argue that what the chancellor did was not supported by the record, so as to say he was clearly erroneous, but that he did nothing in this regard.

The chancellor stated in part:

> "Third, the Court considers the division of marital personal property. The Complainant contends that the parties have already divided their personal property equally. The Respondent, on the other hand, asserts that the parties acquired certain personal property and savings during their marriage, a disproportionate share of which is presently in possession of the Complainant.
>
> The Court has carefully reviewed the testimony and evidence presented in this case and finds that the personal property acquired during the course

of the parties' marriage has been divided in sub-
stantially equal portions between them."

He then set forth the testimony relative to the personal
property and its distribution, finally concluding:

"Clearly, the items and monetary figures shown
above indicate that the parties have made an
approximately equal distribution of their marital
assets. For this reason, the Court will not disturb
the distribution that has already been made by
the parties."

We see no error under the circumstances.

*Decree vacated only insofar as it
provides for sale in lieu of parti-
tion and for distribution,
otherwise the decree is affirmed.*

*Case remanded for further pro-
ceedings consistent with this
opinion.*

*Costs to be paid two-thirds by appel-
lant and one-third by appellee.*