In re the MARRIAGE OF Karen Lea
MANN, Petitioner-Appellee,

and

John Milton Mann,
Respondent-Appellant.

No. 81SA410.

Supreme Court of Colorado,
En Banc.

Dec. 6, 1982.

William Litvak, Denver, for petitioner-appellee.

John Milton Mann, respondent-appellant pro se.

DUBOFSKY, Justice.

The respondent in a dissolution of marriage action, John Milton Mann (husband), appeals the Jefferson County District Court order dividing marital property and establishing child visitation. We affirm the order of the district court.

On June 6, 1978, Karen Lea Mann (wife) petitioned for dissolution of marriage and custody of the two children, then ages nine and eleven, of the marriage. Temporary orders, entered in July 1978, directed the husband to assume the debts consolidated through a consumer credit counseling service; required the husband to pay $125 a month child support for each child; and instructed both parties to do everything necessary to keep the family residence from foreclosure. The husband later was ordered to make house payments of about $390 a month from January 1979 until permanent orders were entered in November 1979.

After the dissolution action was filed, the husband's employer transferred him to New Orleans, Louisiana. The husband's gross monthly income during the pendency of this action increased from $1100 (with housing, food, and transportation expenses paid by his employer) to $1900 a month. During the same time, the wife's gross income varied, reaching a maximum of $800 a month at the time the court entered final orders.

On August 10, 1979, the husband filed for bankruptcy in Louisiana. When the district court entered the decree of dissolution on November 29, 1979, it awarded one-half of the family residence to the wife and the other half to the bankruptcy trustee. In addition, the court ordered the husband to pay $125 a month child support for each child, the consumer debts and tax liabilities of the parties, child support arrearages, and the wife's attorney's fees of $2000. The district court also set two one-week visitations per year for the children and the husband as long as the husband resided out of state. The court noted that the visitation order would be subject to change if the husband moved back to Colorado.

The husband filed an amended new trial motion, asserting that the visitation order was unreasonable, and requesting reconsideration of the marital property division because he subsequently had dismissed his petition in bankruptcy. In addition, he requested assignment of the case to a different judge because he believed that the judge who entered the decree of dissolution was biased against him. The district court heard the new trial motion on September 16, 1980, and on October 14, 1980, entered a modified order. The order directed the husband to pay $4,500 in child support arrearages and $2,730 in house payment arrearages. Finding that the husband had no legitimate excuse for the failure to make those payments, the court entered a contempt order with a 60-day sentence to be stayed if the husband paid $100 a month toward the arrearages and $250 a month child support. The court entered a wage assignment of $350 a month until the arrearages were paid.

The district court also amended the property division order because the husband had withdrawn his bankruptcy petition. The court found that the parties' equity in the family residence was $34,000. It awarded $17,000 of that equity to the husband subject to his removal of the federal tax liens for failure to pay income taxes between 1975 and 1979. In addition, the husband was to pay from his $17,000 equity the debts which the court had ordered him to pay on November 29, 1979.

Finally, the court amended its visitation order. The husband received out-of-state visitation rights with his sons for one week during winter break and two weeks during summer break. The husband also could have daytime visits whenever he came to Colorado provided he gave the wife advance

notice. The court retained jurisdiction over visitation and announced an intention to interview the children after the summer, 1981 visit. The husband appeals from the order of October 14, 1980.

## I.

■ The husband first challenges the district court's division of property under section 14–10–113, C.R.S. 1973 [1] as an abuse of discretion because the court allegedly failed to consider the economic circumstances of the parties at the time of the decree and because it denied his motion to compel discovery. The record does not support the husband's contentions. The district court heard testimony that the debts which had been consolidated through a consumer credit counseling service were for family expenses incurred by the husband's use of some of his income for personal expenditures including the costs of annulling his adoption, contributions to the Adoption Liberation Movement, and substantial medical and therapy bills. He failed to pay either federal or state income taxes between 1975 and 1979. Evidence in the record showed that federal tax liens in the amount of $12,500 had been placed on the family residence. The husband's attorney argued that tax liens and other debts that the court ordered the husband to pay exceeded the husband's $17,000 equity in the family home by $4,000. In addition, the husband had incurred attorneys' fees of about $6,500 to pay the six different attorneys he hired between the time the petition for dissolution was filed and the new trial hearing. In the modified property division award entered after the husband withdrew his bankruptcy petition, the district court recognized that even though many of the joint debts of the parties were to be paid through the husband's equity in the house, the wife would remain liable for the unpaid joint debts of the parties.

The husband also contends that the district court abused its discretion in denying a portion of his August 1980 request for discovery. The district court required the wife to comply with the husband's request for recent financial information by filing a new financial affidavit and her 1979 W–2 tax form. However, the district court did not require the wife to file supplementary bank records and other detailed financial information because the district court had had all the necessary information at the date of the dissolution decree. In addition, the district court believed the discovery request oppressive in light of the small amount of property.

■ Division of property in a dissolution of marriage action is a matter within the sound discretion of the trial court, and an appellate court will alter division of property only if the trial court abuses its discretion. *In re Marriage of Graham,* 194 Colo. 429, 574 P.2d 75 (1978); *Moss v. Moss,* 190 Colo. 491, 549 P.2d 404 (1976); *In re Marriage of Garcia,* 638 P.2d 848 (Colo.App. 1981). Similarly, discovery matters ordinarily are within the discretion of the trial court. *Sanchez v. District Court,* 624 P.2d 1314 (Colo.1981); *Mayer v. District Court,* 198 Colo. 199, 597 P.2d 577 (1979). Our review of the record indicates that the district court did not abuse its discretion in dividing marital property or in protecting the wife under C.R.C.P. 26(c) from some of the discovery requests filed by the husband.

## II.

■ The husband's second contention is that the visitation order entered by the

---

1. Section 14–10–113(1) provides:

"[T]he court ... shall divide the marital property, without regard to marital misconduct, in such proportions as the court deems just after considering all relevant factors including:

(a) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(b) The value of the property set apart to each spouse;

(c) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children; and

(d) Any increases or decreases in the value of the separate property of the spouse during the marriage or the depletion of the separate property for marital purposes."

court was not reasonable as required by section 14–10–129(1), C.R.S. 1973.[2] The record contains testimony from the wife that the children were tired when they returned from visits with their father and that the visits were emotionally draining. The husband did not testify about visitation. Again, the question of visitation rights is within the sound discretion of the district court, taking into account the best interests of the children. *In re Marriage of McGee,* 44 Colo.App. 330, 613 P.2d 348 (1980). There is nothing in the record to support the husband's contention that the district court ruling was unreasonable, particularly in light of the court's willingness to review the visitation order within a year of its entry.

## III.

■ Finally, the husband asserts that the district judge should have disqualified himself because of an appearance of bias and prejudice against the husband. The husband contends that the judge's knowledge of a complaint he had filed against the judge with the Judicial Qualifications Commission violated the Colorado Constitution which provides, "All papers filed with and proceedings before the commission on judicial qualifications ... shall be confidential...." *Colo. Const.* Art. VI, Sec. 23(3)(d).[3]

On July 7, 1980, the husband filed a request for reassignment of his motion for a new trial to a different district court judge because he believed that the judge had been unfair in jailing him for alleged contempt, in hearing testimony when neither he nor his counsel was present, and in reading material which biased the judge against him.

**2.** Section 14–10–129(1) provides:
"A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation by the parent would endanger the child's physical health or significantly impair his emotional development."

**3.** Apparently, this case was transferred from the Court of Appeals to this Court because of the husband's allegation that the failure of the judge to reassign the case violated the constitu-

The allegation that the district judge found the husband in contempt of court arose from his arrest for violating a temporary restraining order. At the bond hearing on May 7, 1980, the district judge asked the husband, "You have been arrested for violating a temporary restraining order, is that correct?" The husband responded, "I'm not going to answer since my attorney is not present." The district judge then set bond at $500 and remanded the husband to the sheriff's custody. The husband later made bond, and by agreement of the parties, bond was discharged and the citation dismissed.

Our review of the record indicates that the times when testimony was taken without the husband's presence were either times when the district court denied his request for continuance because of his pattern of firing an attorney and seeking a continuance or when the husband was in the courthouse but refused to come into the courtroom.

The material which allegedly biased the judge includes a copy of a letter the husband had written to his attorney[4] along with a cover letter addressed to the judge dated April 15, 1980 stating, "I am also sending this letter ... and a copy of the November 29, 1979 court order, to the Colorado Supreme Court Judicial Qualifications Committee." The husband bases his claim that the constitutional provision guaranteeing confidentiality of Judicial Qualifications Commission proceedings was violated on the following colloquy between his counsel and the court:

> Counsel: "I think the court is aware that the man has made what could be considered an attack upon this court."

tional mandate of confidentiality. *See* sections 13–4–102(1)(b) and 13–4–110(1)(a), C.R.S.1973.

**4.** In the letter, the husband alleged that he mistrusted the judge because of his "arbitrary and capricious" decisions, his "star chamber meetings," and his chauvinistic attitude. In addition, the letter contained a statement that the husband was withholding child support as pressure to bring about fair visitation.

The Court: "You mean by his letter to the Judicial Qualifying Committee [sic]?" Counsel: "Yes, your honor, and I thought I was not at liberty to mention that." The Court: "The public records are all open. They are in the file in this particular case."

The district court's reference to public records is no more than a reference to the materials which the husband had placed in the public record of the court's proceedings. There is nothing in the record to indicate that there was any violation of the confidentiality of the commission proceedings other than that instituted by the husband.[5]

■ After hearing argument on the request for reassignment to a different court, the district court ruled that there was no reason to disqualify himself from hearing the case.[6] We agree with that ruling. Whether to disqualify in a civil case is a matter within the discretion of the trial court, and its ruling will not be disturbed on appeal except for an abuse of discretion. *Harper v. Harper,* 49 Md.App. 339, 431 A.2d 761 (1981); *Amidon v. State,* 604 P.2d 575 (Alaska 1979).[7] There is nothing in the record here to indicate that the judge was biased against the husband. To allow a litigant to file a letter critical of a trial judge or to inform the judge of the filing of a complaint with the Judicial Qualifications Commission and later assert the judge's knowledge of the complaint or file as a basis for disqualification would encourage impermissible judge-shopping. There is no indication in the record in this case that the judge was biased in any way by the materi-

al which he received from the litigant. The litigant who places such information in the court file cannot expect that such an act by itself will be grounds for disqualification of that judge. *See Smith v. District Court,* 629 P.2d 1055 (Colo.1981) (any opinions formed for or against a party from evidence or conduct occurring before a judge in a judicial proceeding do not constitute the prejudice required to disqualify the judge) (Erickson, J., specially concurring) and *see Watson v. People,* 155 Colo. 357, 394 P.2d 737 (1964) (filing of frivolous civil law suit against criminal trial judge does not disqualify judge from hearing second criminal trial).

IV.

■ The wife requested damages under C.A.R. 38 for the filing of a frivolous appeal.[8] We note that the actions of the husband made this dissolution action at the trial level much more complicated than it needed to be. Some of the bases of this appeal are as insubstantial as those which resulted in an award to the appellee of costs on appeal in *In re Marriage of Trask,* 40 Colo.App. 556, 580 P.2d 825 (1978). In addition, the husband has filed *pro se* an extraordinary number of motions and petitions with this Court while his appeal has been pending. However, the wife has not specified an amount requested for damages, and although we believe that a number of the issues which the husband raised on appeal are frivolous, we decline to award her damages. *In re Everhart,* 636 P.2d 1321 (Colo. App.1981).

Judgment affirmed.

5. In his brief before this Court, then counsel for the husband quotes from a letter to the husband from the Commission, dated June 25, 1980, dismissing his complaint: "The Commission further concludes that the matter which was the subject of your complaint is of an appellate nature and that the Commission has no authority to reverse a judge's decision...."

6. The court's words were, "I have no vendetta against this man."

7. See C.R.C.P. 97 which provides:
"A judge shall be disqualified in an action in which he is interested or prejudiced, or has been of counsel for any party, or is or has been a material witness, or is so related or connected

with any party or his attorney as to render it improper for him to sit on the trial, appeal, or other proceeding therein. A judge may disqualify himself on his own motion for any of said reasons, or any party may move for such disqualification and a motion by a party for disqualification shall be supported by affidavit. Upon the filing by a party of such a motion all other proceedings in the case shall be suspended until a ruling is made thereon....."

8. C.A.R. 38 provides: "If the appellate court shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee."