**Robert E. WRIGHT, Jr., Russell, Angelo and Wright, P.C., Petitioners,**

v.

**DISTRICT COURT In and For the COUNTY OF GUNNISON, SEVENTH JUDICIAL DISTRICT, State of Colorado, and the Honorable Thomas A. Goldsmith, District Judge, Respondents.**

No. 86SA364.

Supreme Court of Colorado, En Banc.

Jan. 20, 1987.

Cooper & Kelley, P.C., Paul D. Cooper, Elizabeth A. Starrs, Charles R. Ledbetter, Denver, for petitioners.

Thomas A. Goldsmith, Judge, Gunnison, pro se.

ERICKSON, Justice.

Pursuant to C.A.R. 21, a petition was filed in this court for a writ of mandamus to require Judge Thomas A. Goldsmith, a district judge in the Seventh Judicial District, to disqualify himself in a malpractice case against the petitioners. We issued a rule to show cause and now make that rule absolute.

Petitioner Robert E. Wright, Jr. is a lawyer associated with the professional corporation Russell, Angelo and Wright, P.C. He is a stockholder and voting member of the professional corporation. Harrison Russell and Wyatt B. Angelo are also shareholders and voting members practicing with the law firm. Thomas A. Goldsmith is a district judge on the District Court in and for the County of Gunnison, Seventh Judicial District. Judge Goldsmith tried *Garland v. Teocalli Associates, Inc.*, 84CV57 and 84CV82, District Court, Gunnison County, Colorado, which included a claim of malpractice against Russell and Russell, Angelo and Wright, P.C.

In *Garland v. Teocalli Associates, Inc.*, at the close of the plaintiff's case, findings and conclusions in favor of the defendants pursuant to rules 41(b)(1) and 52(a) were entered by the court. In the findings the court stated that Wright and the plaintiff, Gary Garland, were close friends, and detailed the long history that Russell had in representing the Garland family. The plaintiff's claims primarily involved his transactions with a development firm that had undertaken to build a hotel and sell all of its rooms as condominiums. When the project failed, Gary Garland, who had the right to sell the condominium units, claimed that he had been denied benefits guaranteed to him as a real estate broker under a contract that he had with the developers. He also asserted that he entered into a contractual relationship with the developers because of Russell. He claimed that Russell represented the developers and did not protect his interests or advise him to retain independent counsel. Garland alleged that Russell undertook to represent him and the developers at the same time, and that there were serious conflicts of interest. He asserted that his financial losses resulted from Russell's decision to abandon Garland's interest in the condominium project and to support the developers.

After reviewing the contract, the court concluded that the developers had the right to terminate Garland and did terminate him in accordance with the provisions of the contract. Accordingly, the court concluded that Garland was not entitled to compensatory or punitive damages against Russell, but declared:

> It has long been recognized in Colorado that attorneys must act with utmost good faith toward and solely for the benefit of those who entrust their interests to them. For breach of this duty attorneys may be held liable in damages in appropriate circumstances. *Howard v. Hester*, [139] Colo. 255, 338 P.2d 106 (1959). For the reasons stated below this court finds that the lawyer defendants, and particularly Russell, breached their duty of utmost good faith to plaintiff but that such breach did not cause compensable damages to him.

The court concluded that the behavior of the lawyer defendants toward the plaintiff was substandard and violated the Code of Professional Responsibility and stated:

> The court appreciates the distress and discomfort that plaintiff has experienced. He had a right to reach for the brass ring as he did and to expect that his lawyers would not interfere in his efforts to grasp it. Their misconduct interfered with his expectations and he has a right to complain about it even if it did not cause him compensable damages. This, however, is not the proper forum within which to do that. The Colorado Supreme Court has the sole and exclusive authority to regulate and discipline lawyers for their misconduct and it is that court that can and should provide the plaintiff with the relief he desires and deserves.

The trial judge subsequently filed a grievance with the Colorado Supreme Court Grievance Committee and recommended "harsh discipline" for Russell. Subsequently, a malpractice claim was filed by Michael V. Hotz in the district court of Gunnison County against Robert E. Wright, Jr. and the firm of Russell, Angelo and Wright, P.C., as well as other lawyers. Paul D. Cooper, who appeared on behalf of Russell and the law firm in the *Garland* case and represented Russell in the proceedings before the grievance committee, was also counsel for Wright and the law firm in the *Hotz* case. Cooper wrote Judge Goldsmith on June 4, 1986, and requested that Judge Goldsmith recuse himself in the *Hotz* case because of his opinion in the *Garland* case. Judge Goldsmith refused to recuse himself, and advised counsel that a judge should not disqualify himself unless his partiality may be reasonably questioned.

Thereafter a formal motion to disqualify Judge Goldsmith was filed pursuant to C.R.C.P. 97. The motion was supported by affidavits of Harrison F. Russell, Robert E. Wright, Jr., and Wyatt B. Angelo. In denying the motion for disqualification, Judge Goldsmith declared that the opinion in the *Garland* case involved Harrison Russell and did not provide Robert Wright with a basis for disqualification.

In *People v. Garcia*, 698 P.2d 801, 806 (Colo.1985), we affirmed an order by the trial judge disqualifying the entire district attorney's office because a deputy district attorney was an essential witness, and said:

The Code of Professional Responsibility would require a private law firm to withdraw if an attorney associated with the firm was required to withdraw because of an ethical rule. *See Code of Professional Responsibility* DR 5–105(D). *See, e.g., Armstrong v. McAlpin,* 606 F.2d 28 (2d Cir.1979); *Comden v. Superior Court,* 20 Cal.3d 906, 145 Cal.Rptr. 9, 576 P.2d 971 (1978).

■ The rule of imputed disqualification recognizes the close personal and financial relationship that exists between an attorney and other members of the law firm. That relationship not only prevents members of the firm from representing conflicting interests, but also constitutes grounds for disqualifying another member of the law firm. Judge Goldsmith's view of the propriety of Russell's conduct may influence him in considering the malpractice claim against Wright and the firm of Russell, Angelo and Wright, P.C. The fact that Judge Goldsmith in his own mind does not believe that he is prejudiced against Wright and his firm does not prevent disqualification if the motions and affidavits reflect prejudice and an appearance of impropriety.

Judge Goldsmith relied on *Smith v. District Court,* 629 P.2d 1055 (Colo.1981), as authority for his position that rulings and observations of a trial judge generally are not grounds for disqualification during a trial. He concluded that even though disqualification might be desirable in this case, it was legally not necessary and could be a basis for future "judge shopping" by the firm. He examined the affidavits and determined that the affidavits did not contain facts sufficient to warrant disqualification.

After we issued our rule to show cause, Judge Goldsmith filed a response in the form of a letter and stated:

Petitioner is unhappy with the findings I made in the case involving his partner even though I ruled in his favor. Because I dismissed it at the end of the plaintiff's evidence, I had to make findings pursuant to CRCP 41. Those findings, by the way, are attached to the Rule 21 petition as appendix A. In them, as you will see, I tried to explain to the plaintiff why he'd lost his case seeking millions of dollars. I told him that even though he had successfully proven part of his case against his former lawyer, the liability part, he had not proven the rest of it, the part having to do with damages and causation. I then told him that I was required to dismiss his case but that he could grieve his former lawyer. I did

not know at that time that he was going to do that. After his case was over, I thought about *my* duties for a while and reviewed CRCP 241.5 and the ABA materials entitled, *Judicial Response to Lawyer Misconduct.* I concluded that I had an affirmative duty to report petitioner's partner to the Grievance Committee because evidence of his misconduct had been presented.

█ He later wrote the Chief Justice of this court asking whether the petitioners were excused from complying with his order for the expeditious handling of a case in his court. Our order to show cause stayed all proceedings until the original proceeding was resolved, but to clarify the issue, our clerk notified Judge Goldsmith that all proceedings were stayed until further order.[1]

█ Counsel for Russell, Angelo and Wright, P.C. advised the trial court in the initial letter seeking recusal that it would be necessary to take Judge Goldsmith's deposition to properly defend the grievance proceedings. A fair reading of the affidavits reflects far more than mere adverse rulings in the *Garland* case. Russell allegedly was guilty of unprofessional conduct and rendered substandard service to Garland because of a conflict of interest and his desire to accommodate the developers. The appearance of impropriety that would arise from Judge Goldsmith appearing as a witness before the grievance committee to support his complaint that he said required "harsh discipline" while sitting as a trial judge on a case charging the same firm with malpractice is apparent.

█ Once facts have been set forth that create a reasonable inference of a "bent of mind" that will prevent the judge from dealing fairly with the party seeking recusal, it is incumbent upon the trial judge

to recuse himself. *See People v. Botham,* 629 P.2d 589, 595 (Colo.1981); C.J.C. Canon 3(C)(1). A trial judge must accept the affidavits filed with the motion as true, even though the judge believes that the statements contained in the affidavits are false or that the meaning attributed to them by the party seeking recusal is erroneous. *Johnson v. District Court,* 674 P.2d 952 (Colo.1984). C.R.C.P. 97 provides:

> A judge shall be disqualified in an action in which he is interested or prejudiced, or has been of counsel for any party, or is or has been a material witness, or is so related or connected with any party or his attorney as to render it improper for him to sit on the trial, appeal, or other proceeding therein. A judge may disqualify himself on his own motion for any of said reasons, or any party may move for such disqualification and a motion by a party for disqualification shall be supported by affidavit. Upon the filing by a party of such a motion all other proceedings in the case shall be suspended until a ruling is made thereon. Upon disqualifying himself, a judge shall notify forthwith the chief judge of the district who shall assign another judge in the district to hear the action. If no other judge in the district is available or qualified, the chief judge shall notify forthwith the court administrator who shall obtain from the Chief Justice the assignment of a replacement judge.

We said in *Johnson v. District Court,* 674 P.2d 952 (Colo.1984):

> Ordinarily, the question of whether a judge should be disqualified in a civil case is a matter within the discretion of the trial court. *In re Marriage of Mann,* 655 P.2d 814 (Colo.1982). However, where an attorney for one of the litigants signs a verified affidavit alleg-

---

1. The letter in response to our order to show cause was prepared by the trial judge and submitted in support of his denial of the motion for disqualification. It is better practice for a trial judge to allow someone else to appear and an-

swer the rule to show cause. The response in this case is akin to the counter affidavit that we condemned in *People ex rel. Burke v. District Court,* 60 Colo. 1, 152 Pac. 149 (1915).

ing conduct and statements on the part of a trial judge which, if true, show bias or prejudice or the appearance of bias or prejudice on the part of the trial judge, it is an abuse of discretion if that judge does not withdraw from the case, even though he or she believes the statements are false or that the meaning attributed to them by the party seeking recusal is erroneous. In such a case, the judge should not pass upon the truth or falsity of the facts alleged in the affidavit, but only upon the adequacy of the motion as a matter of law. "The motion and supporting affidavit speak for themselves and the only question involved is whether the facts alleged are sufficient to compel the judge to disqualify himself." *Kovacheff v. Langhart,* 147 Colo. 339, 343–44, 363 P.2d 702, 705 (1961). The motion and affidavits are legally adequate if they "state facts from which it may reasonably be inferred that the judge has bias or prejudice that will prevent him from dealing fairly" with the party seeking recusal. *People v. Botham,* 629 P.2d 589, 595 (Colo.1981).

*Johnson v. District Court,* 674 P.2d at 955–56 (footnote omitted).

The motion and the supporting affidavits, in our view, were sufficient and require disqualification to avoid the appearance of impropriety. Accordingly, the rule to show cause is made absolute and Judge Thomas Goldsmith is directed to disqualify himself from further proceedings in the within case.