The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
March 7, 2019

## 2019COA31

**No. 16CA2229, *People v. Roehrs* — Judges — Extrajudicial Source Doctrine — Code of Judicial Conduct — Impartiality — Disqualification**

A division of the court of appeals considers whether a trial judge is disqualified from presiding over a criminal trial where she has witnessed part of the alleged offense occur in her courtroom. Examining the scope of the extrajudicial source doctrine, the division concludes that although knowledge gained in the course of a judge's courtroom duties does not normally prevent a trial judge from presiding over subsequent, related proceedings, when a trial judge witnesses all or part of a crime in the courtroom, she has "personal knowledge of facts that are in dispute" within the meaning of Rule 2.11(A)(1) of the Colorado Code of Judicial

Conduct. Therefore, her impartiality may reasonably be questioned, raising an appearance of impropriety.

In this case, because the trial judge failed to recuse herself from a criminal trial although she had witnessed part of the crime, the division reverses the judgment of conviction and remands with directions to grant the appellant a new trial before a different judge.

COLORADO COURT OF APPEALS      **2019COA31**

---

Court of Appeals No. 16CA2229
Teller County District Court No. 15CR57
Honorable Theresa M. Cisneros, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Dana Roehrs,

Defendant-Appellant.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE RICHMAN
Navarro and Welling, JJ., concur

Announced March 7, 2019

---

Philip J. Weiser, Attorney General, Katharine Gillespie, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Leslie A. Goldstein, Alternate Defense Counsel, Steamboat Springs, Colorado,
for Defendant-Appellant

¶ 1    Defendant, Dana Roehrs, appeals the judgment of conviction entered on a jury verdict finding her guilty of retaliation against a witness and harassment. We reverse the judgment of conviction and remand with directions to grant Roehrs a new trial before a different judge.

## I.    Background

¶ 2    Roehrs was an interested party in a dependency and neglect hearing at which Judge Theresa M. Cisneros presided. At the hearing, Sergeant Couch, of the Teller County Sheriff's Department, testified concerning Roehrs's presence at the scene of an investigation that he was conducting. During Sergeant Couch's testimony, Roehrs stood up, walked toward the witness stand, and said, "You're a liar. I am going to have your job." Judge Cisneros asked Roehrs to leave the courtroom, a directive that Roehrs followed. After testifying, Sergeant Couch left the courtroom. On his way to the clerk's office, he passed Roehrs, who was sitting on a bench in the hallway. As he passed, he heard Roehrs say, "I'm going to fuck you up." Sergeant Couch responded, "What did you say. . . . Are you threatening me?" Roehrs responded, "I'm going to

1

sue you." Sergeant Couch replied, "What did you say before that?" Roehrs answered, "I said, I am going to sue you."

¶ 3    As a result of Roehrs's behavior at the courthouse, the People charged her with retaliation against a witness, harassment, and intimidating a witness. § 18-8-704(1)(a), C.R.S. 2018; § 18-8-706, C.R.S. 2018; § 18-9-111(1)(h), C.R.S. 2018.[1] As the presiding judge at the dependency and neglect hearing, Judge Cisneros witnessed some of the behavior and statements that were at issue in the later criminal trial on these charges. The substance, tone, and intent of Roehrs's courtroom statements were disputed at trial, as was her location within the courtroom when she made the statements. Moreover, according to Sergeant Couch, Judge Cisneros later called him and the attorneys into her chambers to discuss what had happened outside the courtroom. During that meeting, Sergeant Couch told Judge Cisneros about the incident with Roehrs. Nonetheless, Judge Cisneros was assigned to preside over the trial on these criminal charges.

---

[1] The People also charged Roehrs with harassment under section 18-9-111(1)(b), C.R.S. 2018, but later dismissed that charge on the first day of trial.

2

¶ 4     Before trial, Roehrs's counsel moved to recuse[2] Judge Cisneros on the grounds that because Judge Cisneros had personal knowledge of the facts to be tried and was a material witness to Roehrs's conduct, there was an appearance of bias or prejudice. Judge Cisneros denied the motion, ruling that Roehrs had failed to prove bias or personal knowledge of disputed facts.

¶ 5     Judge Cisneros then presided over all proceedings in the district court.  The jury found Roehrs guilty of retaliation against a witness and harassment.  Roehrs was acquitted on the charge of intimidating a witness.  Judge Cisneros sentenced Roehrs to four years in the custody of the Department of Corrections and five years of parole for the retaliation conviction, in addition to six months in county jail for the harassment conviction, to run concurrently to her four-year prison sentence.

¶ 6     On appeal, Roehrs contends that the trial court erred in denying her motion to recuse and in imposing an unduly punitive

---

[2] We note that what Roehrs called a "motion to recuse" is also called a "motion to disqualify."  We will use "recusal" and "disqualification" interchangeably here.  C.J.C. 2.11 cmt. 1 ("The term 'recusal' is sometimes used interchangeably with the term 'disqualification.'").

3

sentence. Because we reverse and remand for a new trial based on the denial of the motion to recuse, we do not reach the sentencing issue.

## II. Recusal

### A. Applicable Law

¶ 7 We review a trial court's ruling on a motion to disqualify a judge de novo. *Smith v. Dist. Court*, 629 P.2d 1055, 1056 (Colo. 1981). When evaluating a motion to recuse, we must bear in mind that a judge must not be tainted by bias or partiality. *People v. Julien*, 47 P.3d 1194, 1197 (Colo. 2002). A criminal defendant has a constitutional right to have an impartial judge sit on her case at all stages of the proceedings. *People v. Hagos*, 250 P.3d 596, 611 (Colo. App. 2009). "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955).

¶ 8 Also essential to our review are the statutes, rules, and codes that govern judicial conduct in Colorado. *Smith v. Beckman*, 683 P.2d 1214, 1216 (Colo. App. 1984) (stating that when a judge considers the sufficiency of a motion for disqualification, she must consider the applicable statutes and rules of procedure as well as

the Code of Judicial Conduct). These laws delineate three fundamental limitations on a judge's authority to preside over a criminal case where the judge has knowledge of the allegedly criminal actions.

¶ 9    First, section 16-6-201(1)(d), C.R.S. 2018, and Colorado Rule of Criminal Procedure 21(b)(1)(IV) provide that a judge shall be disqualified when she is "in any way interested or prejudiced[3] with respect to the case, the parties, or counsel."

¶ 10    Second, Canon 2 of the Colorado Code of Judicial Conduct states that "[a] judge shall perform the duties of judicial office impartially, competently, and diligently." Implementing that canon with respect to disqualification, Rule 2.11(A) states as follows:

> A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:

---

[3] Prejudice is "a leaning toward one side of a question involved, from other considerations than those belonging to it, or a bias in relation thereto which would in all probability interfere with fairness in judgment . . . ." *Walker v. People*, 126 Colo. 135, 146, 248 P.2d 287, 294 (1952), *superseded by rule on other grounds as stated in People in Interest of E.G.*, 2016 CO 19, ¶ 13 n.3.

> (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, *or personal knowledge of facts that are in dispute in the proceeding.*

C.J.C. 2.11(A) (emphasis added).[4]  Thus, Rule 2.11(A)(1) goes further than section 16-6-201(1)(d) and Crim. P. 21(b)(1)(IV) in explicitly including not only personal bias and prejudice as a basis for disqualification but also reasonable questions regarding partiality that arise when a judge has "personal knowledge of facts that are in dispute" in a proceeding.  Accordingly, CRE 605 provides that the judge presiding at trial may not testify in that trial as a witness, even if no objection is made.

¶ 11    Third, C.J.C. Rule 2.11(A)(2)(d) further states that a judge's impartiality might reasonably be questioned if a judge knows that she is "likely to be a material witness in the proceeding."

¶ 12    To determine whether recusal is warranted in light of these limitations, a judge must evaluate the sufficiency of the motion and

---

[4] Under the code, "impartiality" means the "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge."  "Knowledge" means "actual knowledge of the fact in question.  A person's knowledge may be inferred from circumstances."  C.J.C., Terminology.

affidavits, accepting the facts stated therein as true. *People v. Botham*, 629 P.2d 589, 595 (Colo. 1981), *superseded by rule on other grounds as stated in People v. Garner*, 806 P.2d 366, 370 (Colo. 1991). A motion is legally sufficient when it states "facts from which it may reasonably be inferred that the judge has a bias or prejudice that will prevent him from dealing fairly with the defendant." *Id.* The court must examine both the actuality and the appearance of fairness in light of the facts alleged. *Id.*; *see Estep v. Hardeman*, 705 P.2d 523, 526 (Colo. 1985) ("Thus, either actual prejudice on the part of the trial judge or its mere appearance can require the disqualification of that judge."). Even if the judge is entirely convinced of her own impartiality, she must take care not to allow the justice system to be impugned by an appearance of partiality. *Botham*, 629 P.2d at 595. This concern must be given the "highest consideration in ruling on a motion for disqualification" to secure the confidence of litigants and maintain public respect for the courts. *Smith*, 683 P.2d at 1216.

B.      Procedural Sufficiency of the Motion and Affidavit

As an initial matter, the People argue that Roehrs's motion fails on procedural grounds. They correctly note that section

7

16-6-201(3) and Crim. P. 21(b)(1) require that the motion be supported by affidavits from at least two credible persons who are not related to the defendant. Roehrs's motion was supported by only one affidavit from her counsel.

¶ 14    The record does not contain any indication that the prosecution objected to the motion to recuse on this basis when it was filed. The motion was also renewed at a pretrial hearing, and the prosecution again made no objection on this basis. However, a party can ordinarily defend the judgment of the trial court on any ground supported by the record. *People v. Eppens*, 979 P.2d 14, 22 (Colo. 1999). Nonetheless, due to the unusual facts at issue in this case and the resulting strong appearance of impropriety, we decline to dispose of this claim on procedural grounds for several reasons.

¶ 15    The judge was aware of the facts on which the motion was based and did not dispute those facts. *See People v. Owens*, 219 P.3d 379, 385-86 (Colo. App. 2009) (reviewing the merits of a petition for rehearing in which a motion to recuse a judge was made without affidavits, because the judge was aware of the facts alleged and did not dispute them). Also, the affidavit was sufficient to verify the facts set forth in the motion. *Botham*, 629 P.2d at 596

8

(stating that the affidavits need not contain all the essential facts but must verify those facts set forth in the motion). Moreover, had this technical deficiency been raised before the trial court, Roehrs may well have been able to cure it by submitting a second affidavit. *Owens*, 219 P.3d at 386 (noting that in the interests of judicial economy, review on the merits is warranted where a court anticipates that a defendant could immediately supplement the motion with the proper affidavits). Finally, the trial court addressed the merits of the motion and denied it only on the merits. We therefore also choose to address the merits.[5] *See People v. Fitzgibbons*, 909 P.2d 1098, 1101 (Colo. 1996) (noting that the respondent filed no affidavit, but the hearing board reached the merits of the case and the court would do likewise); *People in*

---

[5] We note that because Roehrs submitted an affidavit in support of her motion, this case is distinguishable from other cases in which courts declined to review motions for disqualification due to more substantial procedural inadequacies. *Altobella v. People*, 161 Colo. 177, 184, 420 P.2d 832, 835 (1966) (declining to consider a defendant's second motion for change of judge where the defendant attempted, unsuccessfully, to incorporate previously filed affidavits by reference); *People v. Taylor*, 131 P.3d 1158, 1166-67 (Colo. App. 2005) (holding that the trial court properly denied a defendant's motion for recusal where no affidavits were attached to the motion).

*Interest of C.Y.*, 2018 COA 50, ¶¶ 11-12 (considering the merits of a motion to disqualify the judge, despite the lack of affidavits, where a judge solicited the motion and addressed it in open court on the merits).[6]

### C.    Merits of the Motion and Affidavit

¶ 16    In support of her motion, Roehrs alleged the following facts:

- The probable cause affidavit supporting the criminal charges stated that Roehrs stood up at the "defense" table at the dependency and neglect hearing, accused Sergeant Couch of lying, and threatened to "have his job." Roehrs began walking to the witness box, and Sergeant Couch stood up to defend himself if necessary. Judge Cisneros ordered Roehrs out of the courtroom.

- This series of events occurred in front of Judge Cisneros and constituted more than half the contents of the probable cause affidavit.

---

[6] Even had no motion been made, based upon her own knowledge of the factual basis for the motion, Judge Cisneros had a duty to recuse herself sua sponte if the statutes and rules governing disqualification precluded her from presiding over this case. § 16-6-201(2), C.R.S. 2018; Crim. P. 21(b)(2); C.J.C. 2.11(A).

10

- The probable cause affidavit also alleged that Roehrs told Sergeant Couch, "I'm going to fuck you up!"

- Judge Cisneros called the attorneys and Sergeant Couch into her chambers to discuss what had happened in the hallway outside the courtroom. During that discussion, Sergeant Couch told the judge about the incident with Roehrs.

¶ 17    Based on these statements, Roehrs argued that Judge Cisneros had personal knowledge of disputed facts and was a material witness to Roehrs's conduct, creating an appearance of bias or prejudice with regard to "trial procedure, including but not limited to, [the] preliminary hearing, argument on [the] motions for judgment of acquittal, objections, defendant testimony and evidentiary rulings." (In fact, at trial, Roehrs admitted only that she had accused Sergeant Couch of lying on the stand and that she had threatened to sue him during their confrontation in the hallway. The remaining facts were disputed.)

¶ 18    Judge Cisneros found the motion insufficient on three grounds. First, citing *Comiskey v. District Court*, 926 P.2d 539, 545 (Colo. 1996), she noted that "information a judge learns in the

11

performance of his or her judicial duties is generally not sufficient grounds for disqualification." Because the behavior recounted in the supporting affidavit largely occurred during a hearing, Judge Cisneros found that any knowledge she gained during the hearing was not a proper basis for disqualification. Second, she noted that the motion was silent about what she, Sergeant Couch, and the attorneys had discussed in chambers, and, therefore, it did not establish that she had personal knowledge of disputed facts. Third, she found that none of the alleged facts established that she was biased or prejudiced against Roehrs.

¶ 19     We agree with Judge Cisneros's conclusion that the facts alleged in the motion fail to establish actual bias or prejudice on her part, nor does the record demonstrate that the judge harbored actual bias or prejudice against Roehrs during any part of the trial. It is clear that Judge Cisneros's conduct was competent and professional.

¶ 20     With respect to the in-chambers meeting with Sergeant Couch and the attorneys, the record does not support the judge's assertion that the motion was silent about what was discussed. The motion stated that in chambers they discussed "what happened outside the

12

courtroom." This claim is supported in the affidavit, wherein Roehrs's counsel noted that "Sergeant Couch told the Honorable Judge Cisneros about the incident" in chambers. As a result, Judge Cisneros had knowledge of Sergeant Couch's version of the events in the hallway. This occurrence, however, did not give the judge personal knowledge of *disputed* facts. Neither party disputed that, before trial, Sergeant Couch recited roughly the same version of the events in the hallway that he testified to at trial. Therefore, we do not find the in-chambers meeting relevant to our analysis of whether Judge Cisneros should be disqualified except insofar as it contributes to an overall appearance of bias or prejudice.

¶ 21 With regard to Judge's Cisneros's knowledge of what transpired in the courtroom, the court's order is also correct when it asserts that what a judge learns in her judicial capacity is ordinarily an appropriate basis for her observations and "the use of such information is not the kind of matter that results in disqualification." *Smith*, 629 P.2d at 1057. Conversely, when a judge learns something from a source unconnected to her judicial role, she may be disqualified on that basis. *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966) (noting that in order to be

disqualifying, the alleged bias must come from an extrajudicial source, not what the judge observed while presiding over the case); *Comiskey*, 926 P.2d at 545.

¶ 22    This rule has come to be known as the "extrajudicial source doctrine," and its application will ordinarily protect a judge from disqualification based on knowledge gained in the course of her judicial duties. *Liteky v. United States*, 510 U.S. 540, 544 (1994) (recognizing the doctrine and explaining that to be disqualifying, alleged bias and prejudice must "stem from an extrajudicial source" (quoting *Grinnell*, 384 U.S. at 583)). The doctrine applies where a defendant moves to disqualify a judge on the basis that she has previously ruled against him. *People v. Boehmer*, 767 P.2d 787, 790 (Colo. App. 1988). It similarly prevents comments demonstrating a negative opinion of the parties or witnesses from serving as a basis for disqualification as long as such comments arose from knowledge gained during court proceedings. *People v. Dobler*, 2015 COA 25, ¶ 26 (noting that judicial statements that are "critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge," unless the opinion comes from an extrajudicial source (quoting

14

*Liteky*, 510 U.S. at 555)). The extrajudicial source doctrine even counsels against disqualification where a judge has formed an opinion regarding the guilt or innocence of a defendant unless the opinion is so pronounced that it is likely to affect the judge's ability to be impartial at trial. *Walker v. People*, 126 Colo. 135, 145, 248 P.2d 287, 293 (1952), *superseded by rule on other grounds as stated in People in Interest of E.G.*, 2016 CO 19, ¶ 13 n.3.[7]

¶ 23 We therefore consider the following question in this case: When a judge has witnessed an alleged criminal offense in her courtroom, does the extrajudicial source doctrine allow her to preside over the criminal trial of the offense? To answer this question, we must consider the doctrine's limitations and whether, in this case, its protections must yield to serious concerns about the appearance of partiality.

---

[7] *Walker* was decided under chapter 170, section 1 of the 1935 Colorado Statutes Annotated, which contained a narrower standard requiring that a judge be deemed incompetent to hear or try the case where she is "interested or prejudiced" and not including the modern standard stated in C.J.C. 2.11(A)(1).

D.   The Scope of the Extrajudicial Source Doctrine

¶ 24   Contrary to the People's position, the extrajudicial source doctrine does not automatically shield a judge from disqualification due to a judge's courtroom knowledge or activities.  In *Liteky*, the Supreme Court noted that "[s]ince neither the presence of an extrajudicial source necessarily establishes bias, nor the absence of an extrajudicial source necessarily precludes bias, it would be better to speak of the existence of a significant (and often determinative) 'extrajudicial source' *factor*, than of an 'extrajudicial source' *doctrine*, in recusal jurisprudence."  510 U.S. at 554-55. The doctrine has repeatedly been defined as limited in scope.  *See, e.g.*, *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995) (noting that the extrajudicial source doctrine is but one factor in the disqualification analysis); *Davis v. Bd. of Sch. Comm'rs*, 517 F.2d 1044, 1051 (5th Cir. 1975) (noting that there is an exception to the doctrine where pervasive bias and prejudice have been demonstrated), *superseded by statute on other grounds*, Act of Dec. 5, 1974, Pub. L. No. 93-512, 88 Stat. 1609.

¶ 25   Importantly, our supreme court has declined to view the extrajudicial source doctrine as a protection against disqualification

16

in all cases, including those cases where a judge's impartiality is questioned based on knowledge she gained from courtroom proceedings. In *Wright v. District Court*, 731 P.2d 661, 665 (Colo. 1987), the supreme court disqualified a judge because his participation in successive cases raised an appearance of impropriety. The trial judge presided over a case in which the plaintiff claimed that his attorney had committed malpractice. During the trial, the judge heard evidence concerning the attorney's unprofessional conduct toward the plaintiff. Consequently, the judge filed a grievance with the Colorado Supreme Court Grievance Committee recommending "harsh discipline" against the attorney. *Id.* at 663. Subsequently, the same judge was assigned to preside over a different malpractice case against the attorney's firm and several of its other partners. Counsel for the firm requested the judge's recusal and notified the court that he wished to take the judge's deposition in the grievance proceedings. *Id.* at 664. The judge denied the motion for disqualification. In reversing the trial court's order, the *Wright* court concluded that because the judge might appear as a witness against the attorney in the grievance proceeding, his participation in the malpractice case against the

17

attorney's partners and firm created an appearance of impropriety. *Id.* This appearance of impropriety arose entirely from opinions formed as a result of the judge's duties in the preceding case.

¶ 26 Similarly, in *In re Estate of Elliot*, 993 P.2d 474 (Colo. 2000), a judge gained knowledge of a potential crime while presiding over a civil contempt case and later referred the case to the district attorney for criminal prosecution. Noting that the judge appeared to be personally involved in the conflict and that she was a potential witness in the subsequent criminal trial, the supreme court held that a different judge should be substituted in the contempt proceedings on remand.[8] *Id.* at 481-82. The fact that the judge had gained her knowledge of the facts while performing her judicial duties did not preclude her disqualification. *See also Estep*, 705 P.2d at 525-27 (requiring disqualification where a judge who had

---

[8] Our holding here should not be construed to narrow a judge's ability to participate in contempt actions arising from a case in which she presided where it is otherwise proper under the statutes, rules, or common law and where she is not presiding over a case in which she is likely to be a witness. *See* § 18-1-104(3), C.R.S. 2018; C.R.C.P. 107; *People v. Barron*, 677 P.2d 1370, 1372-74 (Colo. 1984) (examining a court's common law power to punish a defendant for criminal contempt).

reviewed a defendant's postconviction motion stated, "I hope this witness is more credible than your other witness" in response to the defendant's request to depose a new witness).

¶ 27    In addition, where Colorado courts have declined to require disqualification based on a judge's participation in prior proceedings, they have repeatedly emphasized that there was no obligation to recuse *because* the judge was not presiding over a case in which she might be a witness. *People v. Schupper*, 2014 COA 80M, ¶¶ 63-65 (declining to disqualify a judge who had witnessed perjury in his courtroom because the perjury case had been transferred to another court, and he was therefore not presiding over a case in which he was "likely to be a material witness *in the proceeding*" (quoting C.J.C. 3(C)(1)(d)(IV) (2009)));[9] *Hagos*, 250 P.3d at 612-13 (declining to disqualify a judge because the affidavit "indicated that the judge did not personally observe or hear any threats during the hearing").

¶ 28    Most significantly, the People do not cite any Colorado case, and we have found none, in which the extrajudicial source doctrine

---

[9] This language now appears in C.J.C. 2.11(A)(2)(d).

19

protects against disqualification when a judge witnesses a crime or part of a crime in her courtroom and then presides over the trial concerning that very same crime. Because Colorado law does not contain a case extending the extrajudicial source doctrine to cover this circumstance, we do not perceive that the extrajudicial source doctrine prevents disqualification here.

### E. Application

¶ 29    Roehrs suggests that the judge was subject to disqualification under C.J.C. 2.11(A)(2)(d) because she was likely to be a material witness. However, she does not develop that argument in her brief. A material witness is one whose testimony goes to a "fact affecting the merits of the cause *and about which no other witness might testify*." *Schupper*, ¶ 65 (quoting *Ex parte Jones*, 86 So. 3d 350, 352 (Ala. 2011)). Roehrs does not specify any facts about which only the judge could testify, and we note that the attorneys and Sergeant Couch were all witnesses to Roehrs's in-court behavior. They all could have testified in the criminal case, obviating the need for Judge Cisneros's testimony. Accordingly, we decline to base our ruling on the thread that the judge was subject to disqualification as a material witness.

20

¶ 30    However, even if Judge Cisneros was not a likely material witness, a judge need not be a likely material witness for disqualification to be mandated under the Code of Judicial Conduct.  Rather, all that is required under Rule 2.11(A)(1) is personal knowledge of facts that are in dispute, which Judge Cisneros had in this case.

¶ 31    Based on the judge's personal knowledge of disputed facts, there was a substantial appearance of impropriety.  This knowledge calls into question her ability to be impartial.  "[A] judge cannot be, or cannot appear to be, impartial if he has personal knowledge of evidentiary facts that are in dispute."[10]  *In re M.C.*, 8 A.3d 1215,

---

[10] Although the motion at issue in this case did not cite CRE 605 and the parties also failed to cite it on appeal, CRE 605 precludes a judge from presiding at trial in a case where she is a witness, demonstrating a concern for the appearance of partiality raised in such a circumstance.  In fact, under substantially similar versions of CRE 605, courts in other states have noted the propriety of disqualifying judges who have personal knowledge of disputed facts even where a judge does not testify because the judge's knowledge, nonetheless, raises an appearance of partiality.

> The problem attendant to a judge having personal knowledge of the facts is that he may thereby be transformed into a witness for one party. . . .  Whether, in a bench trial, a judge can avoid an involvement destructive of

21

1229 (D.C. 2010) (quoting *United States v. Alabama*, 828 F.2d 1532, 1545 (11th Cir. 1987) (per curiam)).

¶ 32    In addition, the judge's knowledge of disputed facts would have affected her performance as a presiding judge. *See Tripp v. Borchard*, 29 P.3d 345, 346-47 (Colo. App. 2001) (disqualifying a judge from presiding over a malpractice case, in part, because he had acted as the settlement judge in prior litigation and therefore had personal knowledge of disputed evidentiary facts). For example, during the course of her participation in this case, Judge Cisneros presided over the preliminary hearing on the charge of retaliation against a witness. This charge required the State to show that Roehrs intentionally used a threat or act of harassment

---

> impartiality where he has personal knowledge of material facts in dispute is a question that cannot be answered satisfactorily . . . .

*State v. Barker*, 420 N.W.2d 695, 700-01 (Neb. 1988) (quoting *Price Bros. Co. v. Phila. Gear Corp.*, 629 F.2d 444, 447 (1980)); *see State v. Gardner*, 661 N.W.2d 116, 118 (Iowa 2003) (declining to reverse a conviction because the judge was not a witness *in the same proceeding* at which he presided but noting that the rule prohibiting a judge from being a witness "is violated whenever the judge functions as a witness, even though the judge may not actually take the stand to testify").

on Sergeant Couch as retaliation against him. *See* § 18-8-706(1). Sergeant Couch testified and was cross-examined at this hearing, providing testimony regarding whether Judge Cisneros forcefully ordered Roehrs to leave the dependency and neglect hearing or politely asked her to leave. This line of questioning was relevant to whether the judge seemed alarmed by Roehrs's behavior. Judge Cisneros was tasked with deciding whether the prosecution had demonstrated probable cause for the charges. In doing so, she was necessarily called on to examine the sufficiency of the evidence with respect to facts that she had personally observed, including whether Roehrs demonstrated sufficient intent to commit the crime and whether the judge herself had been alarmed by Roehrs's behavior when she ordered her out of the courtroom.

¶ 33    Though a judge is ordinarily protected from disqualification based on opinions, attitudes, and knowledge gained during her participation in judicial proceedings, the extrajudicial source doctrine does not prevent disqualification where those opinions, attitudes, and knowledge raise reasonable questions about a judge's ability to impartially weigh the testimony. While it is true that "[i]mpartiality is not gullibility," it is also true that to conduct a fair

23

trial, a judge must not know too much. *Liteky*, 510 U.S. at 551 (quoting *In re J.P. Linahan, Inc.*, 138 F.2d 650, 654 (2d Cir. 1943)). She should not be in a position to contrast the evidence presented at hearings and at trial with her own memory of the conduct at issue. Accordingly, Roehrs's motion was sufficient to raise an appearance of bias or prejudice, making Judge Cisneros's continued participation improper.

¶ 34 The trial judge's actions in this case deviate from the standard delineated in C.J.C. 2.11(A) and the resulting appearance of bias requires us to reverse the conviction. *Botham*, 629 P.2d at 603 (reversing a criminal conviction, in part, on the basis that there was an appearance of prejudice against the defendant); *see, e.g.*, *C.Y.*, ¶¶ 14, 24-25 (reversing a termination decision where the judge operated under an appearance of impropriety); *Wood Bros. Homes, Inc. v. City of Fort Collins*, 670 P.2d 9, 10 (Colo. App. 1983) (reversing a judgment due to an appearance of partiality caused by a violation of the code).

### III. Conclusion

¶ 35 We reverse the judgment of conviction and remand with directions to grant Roehrs a new trial before a different judge.

JUDGE NAVARRO and JUDGE WELLING concur.